## UNITED STATED DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SARAH BRYANT, on behalf of
herself and others similarly situated,

         Plaintiff,

    -vs-

DOMINO'S PIZZA, INC.,
DOMINO'S PIZZA FRANCHISING
LLC, and DOMINO'S PIZZA LLC,

        Defendants.

Case No. 2:22-cv-11319-LJM-APP

Honorable Laurie Michelson
Mag. Judge Anthony Patti

---

### DEFENDANTS' AMENDED AND REVISED[1] MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Fed. R. Civ. P.  12(b)(6) and 9 U.S.C. § 4, Defendants Domino's Pizza, Inc., Domino's Pizza Franchising LLC, and Domino's Pizza, LLC (the "Domino's Defendants") respectfully move to compel arbitration and dismiss Plaintiff's Complaint.

In support of their motion, the Domino's Defendants respectfully rely on the attached Brief in Support and Exhibits.

---

[1] Defendants file this "Amended and Revised" Motion to correct formatting irregularities in the original filings [ECF Nos. 13-15] and comply with the Court's Case Management Guidelines, with the intention that the Amended and Revised Motion supersede the prior filings.  Defendants apologize for the inconvenience.

Pursuant to LR 7.1(a)(2), on September 7, 2022 counsel for the Defendants conferred with counsel for Plaintiff to explain the basis of this motion and seek concurrence in the relief requested.  Concurrence was not obtained.

WHEREFORE, the Domino's Defendants respectfully request that this Court grant their Motion to Compel Arbitration and Dismiss Plaintiff's Complaint.

Dated:  September 12, 2022

By:  s/Edward J. Hood
Edward J. Hood (P42953)
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 38226
Telephone: 313-965-8591
ehood@clarkhill.com

Norman M. Leon
Ill. Bar #6239480
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: 312-368-2192
norman.leon@us.dlapiper.com
*Counsel for Defendants*

39020\447740\268481690

# UNITED STATED DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SARAH BRYANT, on behalf of
herself and others similarly situated,

      Plaintiff,

  -vs-

DOMINO'S PIZZA, INC.,
DOMINO'S PIZZA FRANCHISING
LLC, and DOMINO'S PIZZA LLC,

      Defendants.

Case No. 2:22-cv-11319-LJM-APP

Honorable Laurie Michelson
Mag. Judge Anthony Patti

## BRIEF IN SUPPORT OF DEFENDANTS' AMENDED AND REVISED MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT

## **STATEMENT OF THE ISSUES PRESENTED**

1.      Whether the Defendants are third-party beneficiaries of the written arbitration agreement that Plaintiff entered into with her former employer?

2.      Whether Plaintiff should be equitably estopped from denying her obligation to arbitrate her claims against the non-signatory Defendants in light of her allegations that the Defendants jointly employed her?

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*El-Hage v. Comerica Bank*, Case No. 20-10294, 2020 WL 7389041 (E.D. Mich. Dec. 16, 2020) (Michelson, J.)

*Green v. Mission Health Communities, LLC*, Case No. 3:20-cv-00439, 2020 WL 6702866 (M.D. Tenn. Nov. 13, 2020)

*Townsend v. StandUp Mgmt. Inc.*, No. 1:18CV2884, 2019 WL 3729266 (N.D. Ohio Aug. 8, 2019)

39020\447740\268481690

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND ..............................................................................4

     A.    Domino's Relationship with Its Franchisees.........................................4

     B.    The Plaintiff and Her Allegations ........................................................6

     C.    The Plaintiff Agreed to Arbitrate These Claims .................................8

LEGAL STANDARD.........................................................................................10

ARGUMENT ......................................................................................................11

I.     The Domino's Defendants Can Enforce Plaintiff's Agreement to Arbitrate These Claims .............................................................................11

     A.    The Arbitration Agreement Encompasses These Claims ..................12

     B.    The Domino's Defendants Can Enforce Plaintiff's Obligation to Arbitrate these Claims.......................................................................12

CONCLUSION ...................................................................................................20

39020\447740\268481690

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Arnold Corp.*,
   920 F.2d 1269 (6th Cir. 1990) ............................................................................14

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009)...........................................................................................11

*Asia-Pacific Futures Research Symposium Planning Commt. v. Kent
   State Univ.*,
   63 N.E.3d 780 (Ohio Ct. App. 2016)................................................................12

*Chen v. Domino's Pizza, Inc.*,
   No. 09-CV-107, 2009 WL 3379946 (D.N.J. Oct. 16, 2009) ...............................2

*Chitlik v. Allstate Ins. Co.*,
   34 Ohio. App. 2d 193, 196, 299 N.E.2d 295 (Ohio App. Ct. 1973) .................12

*Conrad v. Waffle House, Inc.*,
   351 S.W.3d 813 (Mo. Ct. App. 2011) .................................................................3

*Conver v. EKH Co.*,
   No. 02AP–1307, 2003 WL 22176815 (Ohio Sept. 23, 2003) ...........................13

*Cooper v. MRM, Inc.*,
   367 F.3d 493 (6th Cir. 2004) ..............................................................................9

*Courtland v. GCEP-Surprise, LLC*,
   2013 WL 3894981 (D. Ariz. July 29, 2013)........................................................3

*Danforth & Associates, Inc. v. Coldwell Banker Real Estate, LCC*,
   2011 WL 338798 (W.D. Wash. Feb. 3, 2011)...................................................15

*Dennis v. United Van Lines, LLC*,
   No. 4:17CV1614 RLW, 2017 WL 5054709 (E.D. Mo. Nov. 1,
   2017) .................................................................................................................17

39020\447740\268481690

*In re Domino's*,
  Case No. 16-CV-2492 (AJN)(KNF), 2018 WL 4757944
  (S.D.N.Y. Sept. 30, 2018) ...................................................................................1

*El-Hage v. Comerica Bank*,
  Case No. 20-10294, 2020 WL 7389041
  (E.D. Mich. Dec. 16, 2020) (Michelson, J.) ................................................*passim*

*Fason v. Terminix*,
  No. 2:13-CV-2978-SHL-CGC, 2014 WL 4181593
  (W.D. Tenn. Aug. 20, 2014) .................................................................................5

*Ferrell v. Cypress Environmental Mgmt-TIR, LLC*,
  No. 20-5092, 2021 WL 5576677 (10th Cir. Nov. 30, 2021) ..............................16

*Franklin v. Community Regional Med. Ctr.*,
  998 F.3d 867 (9th Cir. 2021) ..............................................................................16

*Green v. Mission Health Communities, LLC*,
  Case No. 3:20-cv-00439, 2020 WL 6702866
  (M.D. Tenn. Nov. 13, 2020) ...............................................................................16

*Holts v. TNT Cable Contractors, Inc.*,
  No. CV 19-13546, 2020 WL 1046337 (E.D. La. Mar. 4, 2020) ........................16

*Jacobson v. Comcast Corp.*,
  740 F. Supp. 2d 683 (D. Md. 2010) ......................................................................3

*Javitch v. First Union Sec., Inc.*,
  315 F.3d 619 (6th Cir. 2003) ..............................................................................10

*In re Jimmy John's Overtime Litigation*,
  No. 14 C 5509, 2018 WL 3231273 (N.D. Ill. June 14, 2018) .............................3

*Johnson Assocs. Corp. v. HL Operating Corp.*,
  680 F.3d 713 (6th Cir. 2012) ..............................................................................10

*Lovett v. SJZC Fulton IND I, LLC*,
  2016 WL 4425363 (N.D. Ga. Aug. 22, 2016) ......................................................3

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................................9, 11

v

*Nestle Waters N. Am., Inc. v. Bollman*,
    505 F.3d 498 (6th Cir. 2007) ............................................................................11

*Nethery v. Quality Care Invs.*,
    L.P., 814 F. App'x 97 (6th Cir. 2020) ..............................................................8

*Orozco v. Plackis*,
    757 F.3d 445 (5th Cir. 2014) ............................................................................3

*Patterson v. Domino's Pizza, LLC*,
    333 P.3d 723 (Cal. 2014) ..................................................................................2

*People v. Domino's Pizza, Inc., Domino's Pizza, LLC, Domino's
    Pizza Franchising, LLC*,
    Index No. 450627/2016, slip. op. (N.Y. Supreme Ct. Sept. 17,
    2020) ...................................................................................................................2

*Powers v. Charles River Labs., Inc.*,
    No. 16-CV-13668, 2017 WL 4324942 (E.D. Mich. Sept. 29, 2017) ..................5

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010) ............................................................................16

*Reese v. Coastal Restoration & Cleaning Svcs., Inc.*,
    2010 WL 5184841 (S.D. Miss. Dec. 15, 2010) ...................................................3

*Ries v. McDonald's USA, LLC*,
    2021 WL 5768426 (E.D. Mich. Dec. 6, 2021) ...................................................2

*Salazar v. McDonald's Corp.*,
    2016 WL 4394165 (N.D. Cal. Aug. 16, 2016), *aff'd*, 944 F.3d 1024
    (9th Cir. 2019)....................................................................................................3

*Search Int'l, Inc. v. Snelling & Snelling, Inc.*,
    168 F. Supp. 2d 621 (N.D. Tex. 2001) ............................................................15

*Singh v. 7-Eleven Inc.*,
    2007 WL 715488 (N.D. Cal. Mar. 8, 2007) .......................................................3

*Stout v. J.D. Byrider*,
    228 F.3d 709 (6th Cir. 2000) ..........................................................................10

vi

*Townsend v. StandUp Mgmt. Inc.*,
　No. 1:18CV2884, 2019 WL 3729266 (N.D. Ohio Aug. 8, 2019) ..................... 16

*Vann v. Massage Envy Franchising LLC*,
　2015 WL 74139 (S.D. Cal. Jan. 6, 2015) ............................................................. 3

*Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr.
　Univ.*,
　489 U.S. 468 (1989) ............................................................................................. 9

*Williams v. I.B. Fischer Nevada*,
　999 F.2d 445 (9th Cir. 1993) ............................................................................. 15

*ZMC Pharmacy, LLC v. State Farm Mutual Automobile Ins. Co.*,
　307 F. Supp. 3d 661 (E.D. Mich. 2018) ............................................................. 5

**Statutes**

Fair Labor Standards Act .................................................................................*passim*

Federal Arbitration Act Section 4 ............................................................. 3, 7, 9, 10

**Other Authorities**

Rule 12(b)(6) ......................................................................................................... 5, 10

## **INTRODUCTION**

This lawsuit is premised on Plaintiff's assertion that each of the nearly 6,600 Domino's® stores located throughout each of the 50 states—almost 6,200 of which are owned and operated by independent franchise owners—implemented the exact "same employment policies and practices" (Complaint ¶ 6), and committed the exact same wage and hour violations, with respect to each one of their delivery drivers. Plaintiff's Complaint, however, does not seek to hold her actual employer (or any of the thousands of other Domino's franchisees) liable for these alleged Fair Labor Standards Act ("FLSA") violations.

Instead, by falsely claiming that Domino's Pizza, Inc. and its subsidiaries (the "Domino's Defendants") "applies or causes [these same allegedly wrongful wage practices] to be applied" at all Domino's stores nationwide (*id*. at ¶ 15), Plaintiff's Complaint asks this Court to certify collectives consisting of hundreds of thousands of delivery drivers based on the same allegations and the same legal theory that multiple courts have already rejected as a matter of law—namely, that the Domino's Defendants are the "joint employers" of its franchisees' employees. *See, e.g., In re Domino's*, Case No. 16-CV-2492 (AJN)(KNF), 2018 WL 4757944, at **8-9 (S.D.N.Y. Sept. 30, 2018) (concluding that these same allegations did not support a claim of joint employment as a matter of law, that the Domino's Defendants "exercised only the oversight typical of a franchisor," and that "the Domino's

Defendants' standard-setting and enforcement through audits and inspections, though extensive, do not constitute control of the terms of Plaintiffs' employment"); *Patterson v. Domino's Pizza, LLC*, 333 P.3d 723, 726, 733 (Cal. 2014) (rejecting as a matter of law the assertion that the Domino's Defendants were the employers of a franchisee's employee and holding that "[i]t is the franchisee who implements the operational standards on a day-to-day basis, hires and fires store employees, and regulates workplace behavior"); *People v. Domino's Pizza, Inc., Domino's Pizza, LLC, Domino's Pizza Franchising, LLC*, Index No. 450627/2016, slip. op. (N.Y. Supreme Ct. Sept. 17, 2020) (granting the Domino's Defendants' motion for summary judgment on these same allegations); *Chen v. Domino's Pizza, Inc.*, No. 09-CV-107, 2009 WL 3379946, at *3 (D. N.J. Oct. 16, 2009) (dismissing claim of joint employment and noting that "[c]ourts have consistently held that the franchisor/franchisee relationship does not create an employment relationship between a franchisor and a franchisee's employees").

These opinions hardly broke new ground. In fact, to the Domino's Defendants' knowledge, every court in the country that has addressed this issue on the merits has concluded—also as a matter of law—that a franchisor is *not* the joint employer of its franchisee's employees. *See*, *e.g.*, *Ries v. McDonald's USA, LLC*, 2021 WL 5768426, at *5 (E.D. Mich. Dec. 6, 2021) (franchisor's "control over conformity to standard operational details inherent in many franchise settings" and

2

"the power to terminate [the] franchises" does not suffice to give rise to liability as a joint employer).  *See also Orozco v. Plackis*, 757 F.3d 445, 452 (5th Cir. 2014); *Salazar v. McDonald's Corp.*, 2016 WL 4394165, at **8-9 (N.D. Cal. Aug. 16, 2016) (granting summary judgment on FLSA joint employer claims), *aff'd*, 944 F.3d 1024 (9th Cir. 2019); *In re Jimmy John's Overtime Litigation*, No. 14 C 5509, 2018 WL 3231273, at *20 (N.D. Ill. June 14, 2018) ("Jimmy John's control over the systems, operations, and dress code at franchise stores, as pervasive as it may seem, does not amount to joint employment."); *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 690 n. 6 (D. Md. 2010) ("Courts evaluating franchise relationship[s] for joint employment have routinely concluded that a franchisor's expansive control over a franchisee does not create a joint employment relationship."); *Lovett v. SJZC Fulton IND I, LLC*, 2016 WL 4425363, at *16 (N.D. Ga. Aug. 22, 2016); *Vann v. Massage Envy Franchising LLC*, 2015 WL 74139, at *8 (S.D. Cal. Jan. 6, 2015) (imposition of attire, product, and process standards did not make franchisor a joint employer); *Courtland v. GCEP-Surprise, LLC*, 2013 WL 3894981, at *10 (D. Ariz. July 29, 2013); *Singh v. 7-Eleven Inc.*, 2007 WL 715488, at **3-6 (N.D. Cal. Mar. 8, 2007) (franchisor's control of store hours, uniforms, food service, deliveries and ability to terminate franchise agreements, as well as ministerial control over payroll, insufficient to survive summary judgment); *Reese v. Coastal Restoration & Cleaning Svcs., Inc.*, 2010 WL 5184841, at **3-5 (S.D. Miss. Dec. 15, 2010)

3

(franchisor not a joint employer where it lacked power to fire, hire and supervise franchisee employees); *Conrad v. Waffle House, Inc.*, 351 S.W.3d 813 (Mo. Ct. App. 2011) (franchisor's involvement "in every aspect" of "appearance, approach with customers, shift responsibilities, training and uniforms" were proper steps to protect its marks and did not "qualify the franchisor as a statutory employer").

Although these and other matters bring into serious question whether filing this suit was warranted by existing law, this Motion does not ask this Court to address the merits (or lack thereof) of Plaintiff's claims. Rather, the Domino's Defendants bring this Motion because the named Plaintiff agreed, in writing, to arbitrate the very claims set forth in the Complaint. She should be compelled to do so, as required by Section 4 of the Federal Arbitration Act ("FAA"), and this action should be dismissed.

## FACTUAL BACKGROUND

### A.    Domino's Relationship with Its Franchisees

Domino's Pizza Franchising LLC ("DPF") is engaged in the business of franchising the well-known pizza businesses bearing the Domino's® name. Founded as a single pizza shop in 1960, there are currently nearly 6,600 Domino's® stores in the United States, spread out among 50 different states. (Complaint ¶ 122.) Of that total, approximately 6,200 stores are owned and operated by independent franchise

owners. (*Id*.) Collectively, these franchise owners have likely employed more than 200,000 delivery drivers over the past three years.

Each franchisee's relationship with DPF is governed by a written franchise agreement. (*See* Complaint ¶ 137 and the Declaration of Joseph Devereaux (Exhibit 1) ["Devereaux Decl."] at ¶ 2.) While the terms of that agreement have been modified somewhat over the years, each one provides that the franchisee is "solely responsible for recruiting, hiring, training, scheduling for work, supervising and paying the persons who work in their franchise, and that those persons are the franchisee's employees, and not the agents or employees of DPF." Devereaux Decl. at ¶ 2.   Each franchise agreement also makes clear that it is the franchisee's obligation to "operate its store in full compliance with all applicable laws, ordinances and regulations." (*Id*. at ¶ 2.)

When a party moves to compel arbitration at the motion to dismiss stage, "it is beyond question that a court . . . is not constrained to consider only the allegations of plaintiff's complaint." *Powers v. Charles River Labs., Inc.*, No. 16-CV-13668, 2017 WL 4324942, at *4 (E.D. Mich. Sept. 29, 2017); *accord Fason v. Terminix*, No. 2:13-CV-2978-SHL-CGC, 2014 WL 4181593, at *6 (W.D. Tenn. Aug. 20, 2014) (citing *Nexteer Auto. Corp. v. Korea Delphi Auto. Sys. Corp.*, No. 13-CV-15189, 2014 WL 562264, at *5 (E.D. Mich. Feb. 13, 2014)). However, the Court would be entitled to consider the terms of the franchise agreement even if this were

an ordinary Rule 12(b)(6) motion, as the Complaint repeatedly references and relies on the terms of Domino's franchise agreements. Complaint, ¶¶ 125-28, 131, 137-38, 141, 149-151, 167, 178-79, 198) [ECF No. 1, PageID.20-24, 26-27, 30]. *ZMC Pharmacy, LLC v. State Farm Mutual Automobile Ins. Co.*, 307 F. Supp. 3d 661, 668 (E.D. Mich. 2018).

## B. The Plaintiff and Her Allegations

Plaintiff alleges that she worked as a delivery driver at a single Domino's store in Delaware, Ohio for approximately 11 months. (Complaint ¶ 78) [ECF No. 1, PageID.14]. That Domino's store is owned and operated by a franchisee named GT Pizza, Inc. (Glen Stroud Declaration (Exhibit 2) ["Stroud Decl."] ¶ 2.) There is no allegation that Plaintiff ever worked for any other franchisee or at any company-owned Domino's store.

In her Complaint, Plaintiff alleges that she was given "approximately $1.00 for each delivery she completed" while working and that this amount was not enough to reimburse her for the expenses she incurred performing those deliveries. (Complaint at ¶¶ 80-88) [ECF No. 1, PageID.15]. She also alleges that she was required to purchase uniforms and apparel, that she was not properly informed of the tip credit requirements imposed by the FLSA, and that a tip credit was wrongly taken against the overtime hours she claims to have worked. (Complaint at ¶¶ 89-90, 100, 101-02) [ECF No. 1, PageID.15-17].

6

Plaintiff's Complaint purports to assert two categories of claims under the FLSA: (i) minimum wage and overtime claims based on the expenses she incurred making deliveries (Counts 1 and 2); and (ii) minimum wage and overtime claims based on alleged tip credit violations (Counts 3 and 4). Asserting that the employment practices she allegedly experienced during her 11 months of employment are the same practices experienced by "[a]ll delivery drivers at Domino's stores" and that Domino's "applies or causes" these practices to be applied at all Domino's stores nationwide (Complaint ¶¶ 6, 15) [ECF No. 1, PageID.2-3], Plaintiff seeks to represent (on Counts 1 and 2) a collective comprised of:

> All current and former delivery drivers employed at any Domino's Pizza location nationwide and paid a flat per-delivery rate as vehicle-related expense reimbursement at any point during the three years prior to the filing of this Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

(Complaint ¶ 206) [ECF No. 1, PageID.31-32]. With respect to Counts 3 and 4, Plaintiff seeks to represent a collective comprised of:

> All current and former delivery drivers employed at any Domino's Pizza location nationwide and were paid [sic] an hourly wage of less than $7.25 per hour at any point during the three years prior to the filing of this Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

(*Id*. ¶ 207) [ECF No. 1, PageID.32].

According to Plaintiff, each Domino's Defendant is liable for the violations she allegedly experienced—as well as those allegedly experienced by every other

delivery driver at a Domino's store in the United States—as a "joint employer" of each employee of every franchisee.

### C.  The Plaintiff Agreed to Arbitrate These Claims

Even if Plaintiff's joint employment claims had merit—and they do not—they should never have been filed in this (or any other) Court. On or about July 8, 2020, Plaintiff entered into an Arbitration Agreement with the franchisee (GT Pizza, Inc.) for whom she previously worked. *See* Stroud Decl. (Exhibit 2), Exhibit A. In that Agreement, Plaintiff agreed that all "past, current and future disputes or controversies related to . . . payment of wages, benefits, [and] forms or compensation" would be submitted to binding arbitration under the Federal Arbitration Act. (*Id.*) The Agreement specifically calls out as arbitrable, among others:

> Any claim, dispute, and/or controversy under federal, state, or local laws regarding payment of wages, compensation practices, or benefit plans, including, but not limited to, claims for payment or demand for reimbursement of alleged expenses relating to employment with the Company. Said claims may arise under federal law, including but not limited to the Fair Labor Standards Act ("FLSA") ….

(*Id.* at ¶ II.A. and ¶ II.A.(3)).

Plaintiff's obligation to arbitrate these claims encompasses entities other than her employer. Paragraph I of the Arbitration Agreement requires that Plaintiff arbitrate covered claims against the "Company," which is defined to include GT Pizza, Inc., "its parents, subsidiaries, affiliates, predecessors, successors and

8

assigns, . . . [and] team members, *vendors* and agents." (*Id*. at ¶ I; emphasis added.)

In her Complaint, Plaintiff alleges, in various places, that the Domino's Defendants

control franchisees by: (i) acting as the vendor for "dough and other ingredients"

used to serve customers at franchised stores (*see*, *e.g.*, Complaint ¶¶ 133, 139) [ECF

No. 1, PageID.21-22], and (ii) requiring franchisees "to pay 'certain technology fees'

to use Defendants' enterprise-wide platforms." (*Id*. at ¶ 127) [ECF No. 1,

PageID.20].  Like the overwhelming majority of Plaintiff's allegations, these claims

erroneously conflate the Domino's Defendants' alleged control over franchisees—

which is an element of every franchise relationship—with control over the "essential

terms and conditions of employment," such as hiring, firing, discipline, and wages.

*See Nethery v. Quality Care Invs*., L.P., 814 F. App'x 97, 102-03 (6th Cir. 2020).

Under the Agreement, arbitration is to be conducted in accordance with the

Employment Rules of the American Arbitration Association on an individual basis:

> In any arbitration, any claim shall be arbitrated only on an individual
> basis and not on a class or private attorney general basis. The Team
> Member [Plaintiff] and the Company expressly waive any right to
> arbitrate as a class representative, . . . and there shall be no joined or
> consolidation of parties. All arbitration shall be brought on a separate
> and individual basis.

(*Id*. at ¶ III.A.)

Signing the Arbitration Agreement was not a condition of Plaintiff's

employment. (Stroud Decl. ¶ 3.) To the contrary, Plaintiff was given the right to opt-

out of the Arbitration Agreement. (*Id*. at ¶ VI.) In the line immediately above her

9

signature, Plaintiff acknowledged that, unless she timely opted-out, she would "be required to arbitrate all disputes with the company that are covered by this arbitration agreement," and that she understood "that this arbitration agreement contains a waiver of jury trial." (*See* Exhibit B to the Stroud Declaration (Exhibit 2), which is the executed Acknowledgement of Arbitration.) Plaintiff never opted-out. (Stroud Decl. ¶ 3.)

## LEGAL STANDARD

The FAA "expresses a strong public policy favoring arbitration in a broad range of disputes." *Cooper v. MRM, Inc.*, 367 F.3d 493, 498 (6th Cir. 2004). Indeed, the primary purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989); *accord Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA expresses Congress' intent "to mandate enforcement of all covered arbitration agreements").

One of the primary vehicles for the enforcement of arbitration agreements is Section 4 of the FAA. That section provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided

10

for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. Underlying this provision is the settled principle that, "[i]f parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000). Absent such circumstances, "[i]f a valid arbitration agreement governs a claim, courts must compel arbitration." *El-Hage v. Comerica Bank*, Case No. 20-10294, 2020 WL 7389041, at *2 (E.D. Mich. Dec. 16, 2020) (Michelson, J.). In this way, "an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012); *accord El-Hage*, 2020 WL 7389041, at *2 ("A party's failure to pursue arbitration in spite of a compulsory arbitration provision means that the party has failed to state a claim under Rule 12(b)(6).").

## ARGUMENT

### I.    The Domino's Defendants Can Enforce Plaintiff's Agreement to Arbitrate These Claims

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls

11

within the scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003); *accord Stout*, 228 F.3d at 714. In this case, both factors support granting the Domino's Defendants' Motion.

### A.    The Arbitration Agreement Encompasses These Claims

There can be little question that the Arbitration Agreement encompasses the disputes at issue. The FAA establishes that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. "Any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503-04 (6th Cir. 2007). Here, the Arbitration Agreement specifically requires the arbitration of all disputes regarding Plaintiff's wages and reimbursements for expenses, which are the same two issues on which the Complaint is premised.

### B.    The Domino's Defendants Can Enforce Plaintiff's Obligation to Arbitrate these Claims

The Domino's Defendants' right to enforce the Arbitration Agreement is equally clear. Although the Domino's Defendants are not signatories to the Arbitration Agreement, it is settled law that a party need not be a signatory to an arbitration agreement to seek relief under the FAA. "[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through

12

assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). "Accordingly, whether a nonparty may enforce an arbitration agreement is a question of state law." *El-Hage*, 2020 WL 7389041, at *10.

Plaintiff's Arbitration Agreement provides that arbitration will be governed by the FAA and, where the FAA does not apply, by the law of the State where Plaintiff worked—*i.e.*, Ohio. (Complaint ¶ 78.) "Ohio law enforces arbitration agreements against nonparties" through various theories, including "'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *El-Hage*, 2020 WL 7389041, at *10 (quoting *Boyd v. Archdiocese of Cincinnati*, No. 25950, 2015 WL 1600303, at *7 (Ohio 2015) (internal quotations omitted)). Two of these theories apply here.

First, the Domino's Defendants are third-party beneficiaries of the Arbitration Agreement, as they are expressly encompassed by that Agreement. Under Ohio law, a third-party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract. *See Chitlik v. Allstate Ins. Co.*, 34 Ohio. App. 2d 193, 196, 299 N.E.2d 295 (Ohio App. Ct. 1973). "The third party need not be named in the contract, as long as he is contemplated by the parties to the contract and sufficiently identified." *Id.*; *accord Asia-Pacific Futures Research*

13

*Symposium Planning Commt. v. Kent State Univ.*, 63 N.E.3d 780, 786 (Ohio Ct. App. 2016) ("Courts generally presume that an intention to benefit a third party will be found in the language of the agreement. There is no requirement, however, that the third-party beneficiary be explicitly identified in the contract.") (internal quotations and citations omitted). Here, the Arbitration Agreement clearly and unambiguously indicates an intent to encompass entities beyond the signatory to the that Agreement, such as vendors. *See Conver v. EKH Co.*, No. 02AP–1307, 2003 WL 22176815, at *9 (Ohio Sept. 23, 2003) (language in contract which referred to "the client or 'any of their party'" clearly reflected an intent to benefit client's guest). And as noted above, Plaintiff's Complaint expressly alleges that the Domino's Defendants are vendors, asserting that (i) "Defendants operate 21 supply chain facilities across the United States which Defendants use to supply the dough and other ingredients which Domino's uses to serve its customers at Defendants' franchise stores" (Complaint ¶ 133) [ECF No. 1, PageID.21], and (ii) franchisees are required "to pay 'certain technology fees' to use Defendants' enterprise-wide platforms." (*Id.* at ¶ 127) [ECF No. 1, PageID.20].

Second, under Ohio law, "'[a] nonsignatory can compel arbitration with a signatory to an arbitration agreement 'because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract' and if 'the claims were

39020\447740\268481690

intimately founded in and intertwined with the underlying contract obligations.'" *El-Hage*, 2020 WL 7389041, at *10 (quoting *Belmont Med. Care, LLC v. Cmty. Ins. Co.*, No. 2:18-CV-968, 2019 WL 1676003, at *4 (S.D. Ohio Apr. 17, 2019) (quoting *Thomson-CSF v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995))). Non-signatories can enforce arbitration agreements in such circumstances because, if a signatory to an arbitration agreement "c[ould] avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as defendants in his complaint . . . the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 (6th Cir. 1990) (citation omitted).

This theory, typically described "as a species of estoppel," is premised on principles of fairness. *See El-Hage*, 2020 WL 7389041, at*10. "Underlying the estoppel theory is the presumption that signatories should not be permitted to avoid arbitrating 'claims of the very type' they agreed to arbitrate simply because they have sued a nonsignatory." *Doe #1 v. Déjà vu Consulting Inc.*, Case No. 3:17-cv-00040, 2017 WL 3837730, at *16 (M.D. Tenn. Sept. 1, 2017) (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003)).

That is precisely this case. There is clearly a strong and close relationship between the Domino's Defendants and Domino's franchisees. In fact, Plaintiff alleges that the Domino's Defendants apply "rigorous standards" to its franchisees

(Complaint at ¶ 122), restrict franchisees from being involved in other businesses (*id.* at ¶ 125), exercise "substantial control over Plaintiff and similarly situated employees" (*id.* at ¶ 119), control "the actual labor needs of franchise stores, labor budget and allocation for franchise stores, employees' job duties at franchise stores, behavioral policies at franchise stores, [and] employee training at franchise stores (*id.* at ¶ 139) and have "the power to curtail the unlawful policies" that Plaintiff claims exist at all Domino's restaurants (*id.* at ¶ 120) [ECF No. 1, PageID.19, 20, 22].

The relationship between a franchisor and its franchisees is so close that many courts have concluded that a franchisor and its franchisees are incapable of conspiring for purposes of the Sherman Act. *See*, *e.g.*, *Williams v. I.B. Fischer Nevada*, 999 F.2d 445 (9th Cir. 1993) (granting summary judgment on franchisee's claim that a compulsory "no-switching" agreement violated Section 1 of the Sherman Act because the franchisor was "incapable of conspiring" with the franchisee); *Danforth & Associates, Inc. v. Coldwell Banker Real Estate, LCC*, 2011 WL 338798, at *2 (W.D. Wash. Feb. 3, 2011) ("Defendant and Bain are in a franchisor-franchisee relationship and therefore cannot conspire within the meaning of the Sherman Act"); *Search Int'l, Inc. v. Snelling & Snelling, Inc.*, 168 F. Supp. 2d 621, 626 (N.D. Tex. 2001) ("In the present case, the Amended Complaint reveals a

unity of interests between Snelling and its franchisees such that these two entities are incapable of conspiring within the meaning of Section 1.").

Further, the claims underlying this case are the very claims Plaintiff agreed to arbitrate in the Agreement she entered into with her direct (and actual) employer. Specifically, Plaintiff agreed to arbitrate, among others, all claims relating to "payment of wages, compensation practices, or benefit plains, including, but not limited to, claims for payment or demand for reimbursement of alleged expenses . . . ." (*See* Stroud Decl. Exhibit 2 at ¶ II.A.(3)). The mere fact that she chose to assert those claims against the Domino's Defendants instead of the entity that actually employed her does not obviate her obligation to submit those claims to arbitration.

Respectfully, the principles of fairness on which estoppel is premised permit no other result. That no doubt is why, as another district court in this Circuit recently recognized, "other courts around the country have almost uniformly concluded that" where, as here, "the plaintiff alleges joint employment, [she] is estopped from avoiding arbitration with the non-signatory." *Green v. Mission Health Communities, LLC*, Case No. 3:20-cv-00439, 2020 WL 6702866, at *8 (M.D. Tenn. Nov. 13, 2020) (plaintiff who alleged that the non-signatory defendant "jointly employed and jointly violated her rights under the FLSA" was equitably estopped from refusing to arbitrate her claims against the non-signatory); *accord Townsend v. StandUp Mgmt.*

17

*Inc.*, No. 1:18CV2884, 2019 WL 3729266, at *9 (N.D. Ohio Aug. 8, 2019) (plaintiffs were equitably estopped from avoiding their obligation to arbitrate where plaintiffs alleged that the signatory and the non-signatory acted in concert to deny plaintiffs the compensation they were entitled to); *El-Hage*, 2020 WL 7389041, at *10 (applying equitable estoppel in a joint employment case because of the close relationship between the signatory and non-signatory and because the claims raised by the plaintiff were related to the agreement containing the arbitration clause). *Accord Ferrell v. Cypress Environmental Mgmt-TIR, LLC*, No. 20-5092, 2021 WL 5576677, at *4 (10th Cir. Nov. 30, 2021) (reversing order denying non-signatory's motion to compel arbitration and holding that claims against non-signatory "unquestionably comprise substantially interdependent and concerted misconduct" with the plaintiff's direct employer and recognizing that "any FLSA violations committed by [the defendant], a nonsignatory to [the plaintiff's] employment agreement, are inherently 'interdependent' on the alleged misconduct of" the signatory to the agreement); *Franklin v. Community Regional Med. Ctr.*, 998 F.3d 867, 870-71 (9th Cir. 2021) (affirming determination that plaintiffs were obligated to arbitrate claims against non-signatory because those claims "were inherently inseparable" from claims they agreed to arbitrate with the signatory); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010) (estopping plaintiff from objecting to arbitration with alleged non-signatory joint employer); *Holts v. TNT*

18

*Cable Contractors, Inc.*, No. CV 19-13546, 2020 WL 1046337, at *4 (E.D. La. Mar. 4, 2020) (allowing non-signatory to compel arbitration of joint employment claim "because of the intertwined, indeed identical, nature of the claims" against the signatory and the non-signatory); *Dennis v. United Van Lines, LLC*, No. 4:17CV1614 RLW, 2017 WL 5054709, at *4 (E.D. Mo. Nov. 1, 2017) ("Plaintiff cannot claim that United and Holman are his employers responsible for FLSA . . . violations yet deny United the right to invoke the arbitration clause . . . .").

Consistent with this authority, this Court should conclude that Plaintiff must pursue her claims against the Domino's Defendants only in arbitration.

19

## <u>CONCLUSION</u>

For the foregoing reasons, the Domino's Defendants respectfully request that this Court grant their Motion to Compel Arbitration and Dismiss Plaintiff's Complaint.

Dated:  September 12, 2022

By:  <u>s/Edward J. Hood</u>
Edward J. Hood (P42953)
CLARK HILL PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 38226
Telephone: 313-965-8591
ehood@clarkhill.com

Norman M. Leon
Ill. Bar #6239480
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: 312-368-2192
norman.leon@us.dlapiper.com
*Counsel for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH BRYANT, on behalf of herself and
others similarly situated,

              Plaintiff,

       -vs-

DOMINO'S PIZZA, INC., DOMINO'S
PIZZA FRANCHISING LLC, and
DOMINO'S PIZZA LLC,
Defendants.

Case No. 2:22-cv-11319-LJM-APP

Honorable Laurie Michelson
Mag. Judge Anthony Patti

---

## BRIEF FORMAT CERTIFICATION FORM

     I, Edward J. Hood, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

     ☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

     ☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

     ☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

     ☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

     ☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

     ☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

     ☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

                            s/Edward J Hood
                            Dated: September 12, 2022

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 12, 2022, my assistant electronically filed the foregoing paper with the Clerk of the Court using the ECF system that will send notification of such filing to all counsel of record.

CLARK HILL PLC

By:   s/Edward J. Hood
      500 Woodward Avenue, Suite 3500
      Detroit, Michigan 38226
      Telephone: 313-965-8591
      ehood@clarkhill.com

39020\447740\268481690