UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH BRYANT, on behalf of
herself and others similarly situated,

    Plaintiff,

-vs-

DOMINO'S PIZZA, INC.,
DOMINO'S PIZZA FRANCHISING
LLC, and DOMINO'S PIZZA LLC,

    Defendants.

Case No. 2:22-cv-11319-LJM-APP

Honorable Laurie Michelson
Mag. Judge Anthony Patti

**DEFENDANTS' RESPONSE TO PLAINTIFF'S RESPONSE
TO THIS COURT'S ORDER TO SHOW CAUSE**

## **STATEMENT OF THE ISSUE PRESENTED**

Whether Plaintiff Sarah Bryant, having admittedly acknowledged in writing that she read, understood, and agreed to be bound by her Arbitration Agreement, has created a genuine issue of material of fact regarding Defendants' ability to enforce that Arbitration Agreement by alleging that she never saw the entire Agreement?

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231 (6th Cir. 2000), overruled on other grounds by *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 645 (6th Cir. 2003) (*en banc*)

*Pellow v. Daimler Chrysler Services N. Am., LLC*, No. 05-73815, 2006 WL 2540947 (E.D. Mich. Aug. 31, 2006)

## ARGUMENT

On September 12, 2022, Defendants Domino's Pizza, Inc., Domino's Pizza Franchising LLC and Domino's Pizza LLC (collectively, "Defendants") filed an Amended and Revised Motion to Compel Arbitration and Dismiss Plaintiff Sarah Bryant's Complaint (the "Motion"). [ECF 16.] The Motion argued that, even though they are not signatories to the Arbitration Agreement Bryant entered into with her employer, Defendants are entitled to enforce that Agreement (which expressly covers these very claims) and compel arbitration because (1) they are third party beneficiaries of the Arbitration Agreement, and (2) settled law makes clear that where, as here, a plaintiff alleges that a defendant is a joint employer, that plaintiff is estopped from avoiding her obligation to arbitrate as to that defendant. [*See* ECF 16 at Page ID.296-300.]

In cases like this one, where the Arbitration Agreement contains a delegation clause, Defendants' ability to compel arbitration would ordinarily be a question for the arbitrator. However, as this Court observed in its Order to Show Cause [ECF 33], Defendants' Motion did not make that argument. This was not an oversight. Indeed, Defendants have previously argued—successfully, and in this Court—the very issue this Court highlighted in its Order to Show Cause. *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020) (because arbitration agreement incorporated the AAA's Rules, the employee of a franchisee was required

1

to arbitrate whether non-signatory Domino's Pizza Franchising LLC and its affiliates had the right to enforce the arbitration agreement the employee entered into with his employer). Defendants did not make that argument in this case because, while one section of the Arbitration Agreement expressly requires arbitration of "[a]ny claim, dispute, and/or controversy relating to the scope, validity, or enforceability of this Arbitration Agreement" (*see* ECF 16-3 at PageID.365), another section states that "[q]uestions of arbitrability, including the validity of this agreement … shall be decided by a court, not by an arbitrator." (*Id*. at PageID.367, ¶ E.) Although unmentioned by Bryant, this inconsistency likely deprived the Agreement of the "clear and unmistakable" evidence needed to show that the parties agreed to have an arbitrator decide gateway issues. *Blanton* 962 F.3d at 844.

What this means is that, at least with respect to this particular Plaintiff, the question of "who" decides whether Defendants may enforce the Arbitration Agreement likely has only one answer: this Court. But whether Defendants may do so likewise permits only one answer: Defendants clearly have the right to enforce that Agreement. That remains true even if this Court is inclined to consider Bryant's newly concocted "defense" to arbitration—*i.e.*, that she never saw the complete

2

Arbitration Agreement she signed—that a review of the docket shows she raised for the first time in her Response to this Court's Order to Show Cause.[1]

As the Court will recall, Bryant did not timely file an opposition to Defendants' Motion to Compel. Instead, on September 27, 2022, Bryant filed a Motion for Expedited Status Conference and Scheduling Order [ECF 17] which asked this Court to stay briefing on Defendants' Motion while she prepared and filed a Motion for Conditional Certification. Her defenses to arbitration—which were then limited to whether "Defendants were parties to or beneficiaries of any agreement with her" and whether she was an interstate transportation worker (and therefore exempt from the Federal Arbitration Act)—could, in Bryant's view, be resolved once notice was sent to the putative collective. [ECF 17 at Page ID.374.]

By Opinion and Order dated October 25, 2022 [ECF 23] this Court denied Bryant's Motion. Noting that the case-law (including the very case Bryant relied on) "significantly undermine[d] the basic premise" of Bryant's motion, this Court ordered Bryant to respond to Defendants' Motion by November 15, 2022. *Id*.

---

[1] Bryant does not contend this supposed issue exists with respect to any other employee of the franchisee for whom she previously worked. [*See* ECF 35 at PageID.494, noting that "this franchisee, at least with Sarah Bryant, did not provide the long form" Arbitration Agreement.] The individualized nature of the inquiry Bryant asks this Court to permit, which involves just one employee of one of several thousand individual franchisees, only highlights the absurdity of Bryant's request that this Court send out notice to a nationwide collective consisting of hundreds of thousands of employees.

3

Once again, she tried to avoid doing so. On November 15, 2022, Bryant filed a Response in Opposition to Defendants' Motion to Compel Arbitration [ECF 26] that asked this Court to "stay the briefing of [Defendants'] Motion" and to direct the parties to engage in limited discovery to allow Bryant the opportunity "to discover facts which are essential to her ability to respond to Defendants' Motion …." (*Id.* at PageID.424.) These facts included: (1) whether "valid, enforceable arbitration agreements exist between the opt-in Plaintiffs and Defendants" because that evidence was (at least in Bryant's view) "germane to the Court's determination of Defendants' Motion and Plaintiff's ability to oppose the same" (*id.* at PageID.429); (2) whether Bryant "fall[s] under the transportation worker exception to the FAA" (*id.* at PageID.431); (3) Domino's "status as a third-party beneficiary" and "the relationship between Defendants and GT Pizza, Inc." (*id.* at PageID.433); and (4) whether the Arbitration Agreement was procedurally and substantively unconscionable, an issue which allegedly necessitated discovery into "who drafted the contract," "whether the terms were explained to Plaintiff Bryant," "whether alterations in the printed terms were possible," and "whether any meaningful alternatives were available [sic] Plaintiff Bryant." (*Id.* at PageID.436-37.) According to Bryant, "[t]he process by which GT Pizza, Inc. addresses disputes and opt-out requests" were also topics on which discovery was needed as they supposedly bore

4

on the substantive unconscionability of the Arbitration Agreement and were "not readily apparent from the document itself." (*Id*. at PageID.437.)

While Defendants' Reply in Support of their Motion to Compel Arbitration showed why Bryant's arguments for discovery were legally unfounded [*see* ECF 30], the most noticeable aspects of Bryant's Opposition were what it failed to say. First, Bryant never addressed (much less contested) the fact that she was equitably estopped from denying her obligation to arbitrate her claims against Defendants. Second, Bryant also never claimed—either in her Motion for Expedited Status Conference, her belated Opposition and Request for Discovery, or at any other point since Defendants filed their Motion nearly a year ago—that she was not presented with the entire Arbitration Agreement when she signed her "Acknowledgement of Arbitration." [ECF 16-3 at PageID.371.] To the contrary, the Declaration of Bryant's counsel that was submitted in support of her Opposition repeatedly references "the arbitration agreement between Plaintiff Bryant and GT Pizza, Inc." [*See* ECF 26-1 at PageID.443 ¶ 3 and PageID.444 ¶ 9.]

Her recent epiphany, which first appeared in Bryant's August 3, 2023 Response to this Court's Order to Show Cause [ECF 35], should be seen for the desperate ploy it is. Regardless, even if true, settled precedent makes clear that Bryant's sudden realization is not enough to relieve her of her obligation to arbitrate—as a matter of law.

5

In her Acknowledgement of Arbitration, which Bryant admits signing, Bryant attested to several dispositive facts. Those included the fact that the Agreement she signed "*contains an agreement to arbitrate*," that she "*read*, underst[ood], and agree[d] to be legally bound to" all the provisions in that agreement, and that she would "be required to arbitrate all disputes" covered by the Arbitration Agreement. [ECF 16-3 at PageID.371; emphasis added.] The law in this Circuit makes clear that, having made these acknowledgements, Bryant cannot now contend that the opposite is true—*i.e.*, that she never read her agreement and never agreed to arbitrate.

For example, in *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231 (6th Cir. 2000), overruled on other grounds by *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 645 (6th Cir. 2003) (*en banc*), the plaintiff signed an employment application under which he agreed to arbitrate any dispute that was "required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which [he] register[ed], as indicated in Question 8." *Id*. at 233. The application, however, "did not specifically delineate the types of claims subject to arbitration." *Id*. That information could only be found by reviewing the rules of the specific organization (in his case the National Association of Securities Dealers ["NASD"]) with which the plaintiff registered. *Id*.

After he was fired, the plaintiff brought suit alleging he was the victim of race and age discrimination. His former employer moved to compel arbitration, arguing that the NASD Code required that the plaintiff arbitrate his claims.

6

The plaintiff countered that because he was not given a copy of the NASD Code, and because no one familiarized him with the terms of that Code, he could not be compelled to arbitrate. *Id*. at 233-34. However, just as Bryant did, the plaintiff in *Haskins* signed a document which acknowledged that he read, understood and agreed to be bound by the rules of the organizations with which he registered. Specifically, in terms that are substantively indistinguishable from those set forth in Bryant's Acknowledgment, the *Haskins* plaintiff certified as follows:

> I have read, understand and agree to abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the states and organizations as they are and may be adopted, changed or amended from time to time....

*Id*. at 233. Based on this acknowledgment, the Sixth Circuit reversed the district court's denial of the defendant's motion to compel and held that the plaintiff was bound to arbitrate his claims. Reiterating the settled principle that "[o]ne who accepts a written contract is conclusively presumed to know its contents and to assent to them" (*id*. at 239, quoting 17A Am. Jur. 2d Contracts § 224 (1991)), the Sixth Circuit explained as follows:

> [I]gnorance as to the terms of the [application] is no defense. Because Haskins signed the [application], which informed him that he would be bound by the NASD rules requiring him to arbitrate his claims arising out of termination of his employment, and because there has been no showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, Haskins is required to arbitrate his claims.

7

*Id*. at 241. The district courts in this Circuit have consistently enforced this same principle. *See*, *e.g.*, *Beauchamp v. Great W. Life Assurance Co.*, 918 F. Supp. 1091 (E.D. Mich. 1996) ("It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding the contract on the ground that the party was ignorant of the contract provisions."); *Pellow v. Daimler Chrysler Services N. Am., LLC*, No. 05-73815, 2006 WL 2540947, at **1, 7 (E.D. Mich. Aug. 31, 2006) (employee who agreed in his application that he would "be governed by and must comply with Chrysler's Employee Dispute Resolution Process ["EDRP"], which requires many employment-related claims to be resolved exclusively through arbitration," was bound to arbitrate, even though the EDRP was not attached to his application, because "ignorance of the terms is no defense"); *Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910 (N.D. Ohio 2003) (rejecting claim of lack of mutual assent to an arbitration agreement and holding that a "plaintiff cannot argue that she did not consent to arbitration because she was not provided a copy of the AAA rules or that [the defendant] did not explain the AAA rules to her"); *Moore v. Performance of Brentwood, L.P.*, No. 3:19-cv-00606, 2019 WL 6715122, at *4 (M.D. Tenn. Dec. 10, 2019) (granting motion to compel arbitration and rejecting contention that there was no meeting of the minds as to the essential terms of the arbitration agreement based on the defendant's failure to provide the plaintiff with the governing rules

8

because the plaintiff did now show any "fraud, duress, mistake, or some other ground upon which a contract may be voided"); *Pippin v. M.A. Hauser Enters., Inc.*, 111 Ohio App. 3d 557, 676 N.E.2d 932, 937 (1996) ("[a] person who signs a contract without making a reasonable effort to know its contents cannot, in the absence of fraud or mutual mistake, avoid the effect of the contract").

As this Court has observed, "[t]he stability of written instruments demands that a person who executes one shall know its contents or be chargeable with such knowledge ... in the absence of circumstances fairly excusing his failure to inform himself." *Beauchamp*, 918 F. Supp. at 1097-98. No such circumstances are alleged here. Because Bryant specifically acknowledged that she read, understood, and agreed to be bound by the Arbitration Agreement, Sixth Circuit precedent makes clear she is bound by that Agreement, and must be compelled to arbitrate.

## **CONCLUSION**

Defendants' Motion to Compel Arbitration should be granted.

By: *s/Edward J. Hood*

Edward J. Hood (P42953)
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 38226
Telephone: 313-965-8591
ehood@clarkhill.com

Norman M. Leon
Ill. Bar #6239480
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: 312-368-2192
norman.leon@us.dlapiper.com

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SARAH BRYANT, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>-vs-<br><br>DOMINO'S PIZZA, INC., DOMINO'S PIZZA FRANCHISING LLC, and DOMINO'S PIZZA LLC,<br>Defendants. | Case No. 2:22-cv-11319-LJM-APP<br><br>Honorable Laurie Michelson<br>Mag. Judge Anthony Patti |

**BRIEF FORMAT CERTIFICATION FORM**

I, Edward J. Hood, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

⊠ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

s/Edward J Hood
Dated: August 10, 2023
