UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SARAH BRYANT,<br><br>    Plaintiff,<br><br>v.<br><br>DOMINO'S PIZZA INC, DOMINO'S PIZZA LLC, and DOMINO'S PIZZA FRANCHISING LLC,<br><br>    Defendants. | Case No. 22-11319<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER RESOLVING SHOW-CAUSE ORDER [33], DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO COMPEL [16] AND GRANTING LIMITED DISCOVERY UNDER RULE 56(d)**

Sarah Bryant worked as a delivery driver for a Domino's Pizza franchisee for 11 months. Bryant says that Domino's—through its control of the franchisee—failed to pay her and other delivery drivers the legally required minimum wage and overtime wages because it did not "adequately reimburse them for their automobile expenses or other job-related expenses." (ECF No. 1, PageID.11.) Bryant also alleges that Domino's failed to adhere to the tip-credit requirements under the Fair Labor Standards Act. (*Id.* at PageID.13–14, 16–18.) So Bryant sued Domino's Pizza, Inc., Domino's Pizza Franchising, LLC, and Domino's Pizza, LLC on behalf of herself and other similarly situated drivers for violating FLSA wage and overtime requirements. Over thirty other Domino's drivers have opted into this litigation on the docket. (*See* ECF Nos. 7, 9, 10, 12, 24.)

Apparently in response to the complaint, Defendants moved to compel Bryant to arbitration based on an agreement between her and, ostensibly, the franchisee. (ECF No. 16.) Bryant asserts she needs more discovery under Federal Rule of Civil Procedure 56(d) to respond to the motion to compel arbitration. (ECF No. 26.)

For the following reasons, the Court denies most of Bryant's requests for discovery, but will allow discovery on two narrow issues involving unconscionability. Accordingly, Defendants' motion to compel arbitration (ECF No. 16) is dismissed without prejudice to refiling once the limited discovery is completed.

## I.

A motion to compel arbitration under § 4 of the Federal Arbitration Act is treated like a Rule 56 motion for summary judgment, and, as the moving party, Defendants "had the initial duty to present evidence that would allow a trier of fact to find all required elements of a contract . . . because [they] bore the burden of proof on [their] contract claim under § 4." *See Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 839 (6th Cir. 2021).

## II.

### A. Delegation Clause

Before the Court addresses the motion, it will discuss a preliminary issue. Upon review of the arbitration agreement, the Court noted that there appeared to be a delegation clause in the agreement. As neither party had addressed the clause, the Court issued a show-cause order pursuant to Federal Rule of Civil Procedure 56(f) asking for additional briefing on the delegation-clause issue. (ECF No. 33.)

In response to the Court's order, Defendants explained that they did not raise enforcement of the delegation clause "because, while one section of the Arbitration Agreement expressly requires arbitration of '[a]ny claim, dispute, and/or controversy relating to the scope, validity, or enforceability of this Arbitration Agreement,' another section states that '[q]uestions of arbitrability, including the validity of this agreement . . . shall be decided by a court, not by an arbitrator.'" (ECF No. 36, PageID.502 (citing ECF No. 16-3, PageID.356, 367).) "[T]his inconsistency," say Defendants, "likely deprived the Agreement of the 'clear and unmistakable' evidence needed to show that the parties agreed to have an arbitrator decide gateway issues." (*Id.* (citing *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020).)

For this reason, the Court concludes that Defendants intended to waive the issue. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 443 (6th Cir. 2021) (explaining that waiver "is the intentional relinquishment or abandonment of a known right"). Thus, the delegation clause will not be enforced, and the Court will consider the other issues raised by the motion.

Accordingly, the issue of whether a valid arbitration agreement exists and whether Defendants can enforce the agreement is for this Court to decide. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) ("If a party challenges the validity under § 2 [of the FAA] of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4.").

### B. Motion to Compel and Rule 56(d)

In their motion to compel arbitration, Defendants focus on whether they—as third parties—should be entitled to enforce Bryant's arbitration agreement with Domino's franchisee, GT Pizza, Inc. (ECF No. 16.)

In response, Bryant invokes Federal Rule of Civil Procedure 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery[.]" The affidavit or declaration in support of additional discovery "must indicate the need for discovery, what material facts may be uncovered, and why the information has not been previously discovered." *Siggers v. Campbell*, 652 F.3d 681, 696 (6th Cir. 2011); *see also Cacevic v. City of Hazel Park*, 226 F.3d 483, 489 (6th Cir. 2000). "Courts in this circuit have denied requests to defer under Rule 56(d) when the 'affidavit fail[ed] to provide concrete examples of the discovery sought' such as 'a description of the documents, depositions, affidavits, or other evidence to support' a response in opposition." *Lookout Mountain Suites, LLC v. Pinkston*, No. 1:18-cv-311, 2021 WL 722732, at *3 (E.D. Tenn. Feb. 24, 2021) (quoting in part *NCMIC Ins. Co. v. Smith*, No. 2:18-cv-533, 2019 WL 1958651, at *3 (S.D. Ohio May 2, 2019)); *see also Palmer v. Mary Jane M. Elliot, P.C.*, No. 20-13209, 2021 WL 1626355, at *2 (E.D. Mich. Apr. 27, 2021) (granting discovery under Rule 56(d) where party identified a specific agreement and four depositions it needed to prove that a genuine dispute of material fact existed).

Specifically, Bryant identifies four issues she says she needs discovery on before she can respond to Defendants' motion to compel arbitration: one, "[w]hether valid, enforceable arbitration agreements exist between the opt-in Plaintiffs and Defendants"; two, "Plaintiffs['] . . . role in the transportation of goods in interstate commerce for Defendants"; three, "the relationship between Defendants and GT Pizza, Inc."; and four, "procedural and substantive unconscionability." (*See generally* ECF No. 26.)

The Court addresses each area of requested discovery in turn.

### 1. Existence of Arbitration Agreements for opt-in Plaintiffs

Start with Bryant's request for discovery of arbitration agreements that Defendants "would seek to enforce" as to the opt-in Plaintiffs. (ECF No. 26, PageID.429.)

The Court clarifies that it reads Defendants' motion to compel arbitration as impacting and asserting their rights as to Bryant alone. So discovery as to the arbitration agreements affecting other opt-in Plaintiffs is not relevant to the motion and would not uncover "facts essential to justify [Bryant's] opposition" to the motion to compel arbitration. *See* Fed. R. Civ. P. 56(d); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (discussing Congress' intent "in the Arbitration Act[] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible"). And of course, Defendants have produced the arbitration agreement that they wish to enforce against Bryant, which is the only agreement at issue now. (*See* ECF No. 16-3.) As such, the Court finds that

5

Bryant is not entitled to discovery on the existence of arbitration agreements applicable to the opt-in Plaintiffs at this time.

However, contrary to Defendants' position, the Court does not intend to dismiss the entire action even if it does ultimately send Bryant to arbitration. As Bryant has pointed out, the individuals who have already opted into the collective are akin to parties. *See Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 394 (6th Cir. 2021) ("Once they opt in, these plaintiffs become 'party plaintiffs,' enjoying 'the same status in relation to the claims of the lawsuit as do the named plaintiffs[.]"); *see also* 29 U.S.C. § 216(b). Of course, this may change upon a court's determination of whether the employees are similarly situated such that a collective action can be maintained. But for the time being, the Court sees no reason it would not grant leave to amend the complaint and to substitute a new named plaintiff from the opt-in plaintiffs. *See Green v. Platinum Restaurants Mid-Am., LLC*, No. 3:14-CV-439, 2020 WL 1452724, at *6 (W.D. Ky. Mar. 25, 2020) ("[D]ismissal of the Named Plaintiffs does not require the FLSA collective action to be dismissed when, as here, there are other plaintiffs that have opted into the collective action. Instead, when the named plaintiffs' FLSA claims are dismissed, courts customarily grant plaintiffs leave to substitute opt-in plaintiffs for those dismissed named plaintiffs.").

If such an amendment to the complaint is necessary, the Court is also inclined to grant Bryant's discovery request as to the existence of arbitration agreements that may potentially bind the opt-in Plaintiffs. *Cf. Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1012 (6th Cir. 2023) ("We therefore respectfully disagree

that district courts can or should determine, 'by a preponderance of the evidence,' whether *absent* employees have agreed to arbitrate their claims." (emphasis added)). Such a request will aid Bryant in substituting a named plaintiff that may maintain this litigation—to the extent one exists.

So discovery on any arbitration agreement other than Bryant's is improper under Rule 56(d) as to the motion before the Court. But the Court will revisit the issue if the named plaintiff must be substituted in the future.

### 2. Transportation Exception

Bryant also asks for "the opportunity to develop record evidence in this matter as to their role in the transportation of goods in interstate commerce for Defendants." (ECF No. 26, PageID.433.) This is relevant, says Bryant, to see whether the delivery drivers fall into the "transportation worker" exception to the Federal Arbitration Act. *See* 9 U.S.C. § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."). For two reasons, this request will be denied.

For starters, Bryant's request is deficient. As described earlier, courts have interpreted Rule 56(d) to require the moving party to provide "'concrete examples of the discovery sought' such as 'a description of the documents, depositions, affidavits, or other evidence to support' a response in opposition." *Lookout Mountain Suites, LLC v. Pinkston*, No. 1:18-cv-311, 2021 WL 722732, at *3 (E.D. Tenn. Feb. 24, 2021) (quoting in part *NCMIC Ins. Co. v. Smith*, No. 2:18-cv-533, 2019 WL 1958651, at *3 (S.D. Ohio May 2, 2019)). Bryant does no such thing here. Rather, she asks for broad,

7

unfettered discovery into the delivery drivers' "role in the transportation of goods in interstate commerce[.]" (*See* ECF No. 26, PageID.433; ECF No. 26-1, PageID.444 (affidavit stating the same); *id.* at PageID.445 ("Plaintiffs will serve written discovery requests and conduct depositions[.]").) Bryant failed to identify what documents she seeks, who she wishes to depose, or even how many depositions she might need. *See also Palmer v. Mary Jane M. Elliot, P.C.*, No. 20-13209, 2021 WL 1626355, at *2 (E.D. Mich. Apr. 27, 2021) (granting discovery under Rule 56(d) where party identified a specific contract and four depositions it needed to prove that a genuine dispute of material fact existed). Nor has she stated what material facts she hopes to gain from discovery as to Bryant's role.

Bryant's request also lacks any explanation of why "for specified reasons" she is unable to present these facts without discovery. *See* Fed. R. Civ. P. 56(d). For example, the Court imagines that Bryant herself is well aware of her own duties as a delivery driver and could provide an affidavit describing what functions of her job might qualify her for the transportation-worker exception. Yet, those facts have not been presented or put at issue and are likely to be more important to the assertion of this defense than general information about Domino's supply chain. Indeed, an employee's uncontroverted declaration about her job duties was a central fact in the Supreme Court's recent opinion interpreting the transportation-worker exception. *See Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1788 (2022) (relying on employee's "uncontroverted declaration" to find that "Southwest has not meaningfully contested that ramp supervisors like Saxon frequently load and unload cargo" and analyzing

8

whether loading or unloading cargo fell within the exception's definition). It was that detail about the plaintiff's job—and not her general role in the transportation industry—that led the Court to find the exception applied. *See id.* at 1791 (rejecting "[Plaintiff's] argument that § 1 exempts virtually all employees of major transportation providers"). So it appears that much of the relevant information Bryant seeks to assert the defense would be in her own hands.

Second, Bryant has not provided the Court with any basis to believe the transportation-worker defense adequately puts the enforcement of the arbitration agreement in issue. *See Plott v. Gen. Motors Corp., Packard Elec. Div*, 71 F.3d 1190, 1196 (6th Cir. 1995) (discussing whether "the desired discovery would have changed the ruling below"). Bryant's argument focuses on Domino's supply chain and the exception being applied to "last mile" workers within this supply chain. (ECF No. 26, PageID.432.) But the Court fails to see how either of these applications of the transportation-worker exception would apply to delivery drivers like Bryant. For example, in *Carmona Mendoza v. Domino's Pizza, LLC*, the Ninth Circuit found that Domino's drivers who deliver ingredients to Domino's California Franchisees were exempt from the FAA as transportation workers. *See generally* 73 F.4th 1135 (9th Cir. 2023). There, the court found that though the ingredients—which were sourced outside of California—briefly "pause[d]" at the Domino's warehouse in California before arriving at the California franchisee, the Domino's truck drivers still transported goods in interstate commerce "for the last leg to their final destinations," and were thus exempted from the FAA. *Id.* at 1138. But Domino's truck drivers

involved in the transportation of out-of-state ingredients are distinct from Domino's delivery drivers who deliver pizza and other prepared foods made by a Domino's franchisee to a customer. Indeed, the good being transported is different—the out-of-state ingredients were cooked within the state into pizzas and other food and resold as Domino's meals to customers. (*See* ECF No. 1, PageID.12 (discussing how Bryant and other delivery drivers delivered "Defendants' pizzas and related food products and beverages").) And as far as the Court is aware, Bryant is not arguing that the pizzas or food ever crossed state lines.

True, as Bryant argues, courts have stated that it does not matter if the workers themselves cross state lines. *See Saxon*, 142 S. Ct. at 1791 (rejecting argument that the FAA "does not exempt cargo loaders because they do not physically accompany freight across state or international boundaries"). But "transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Saxon*, 142 S. Ct. at 1790. Here—where the goods in question never entered interstate commerce—the Court is hard pressed to see how the transportation-worker exception applies. *See Carmona Mendoza*, 73 F.4th at 1138 (finding that "the goods in this case were *inevitably destined* from the outset of the interstate journey for Domino's franchisees" (emphasis added)); *id.* at 1138 (contrasting case to *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), because "in contrast to *Schechter*, which involved chickens slaughtered at the poultry company and only then delivered to local buyers, the relevant ingredients in this case are unaltered from the time they arrive in the

10

Supply Center until they are delivered to franchisees"); *see also Immediato v. Postmates, Inc.*, 54 F.4th 67, 79 (1st Cir. 2022) ("Purchases from local restaurants and businesses are emblematic of such intrastate transactions. The deliveries that are thereafter made in fulfillment of those purchases bear only a tenuous relationship to the interstate movement of goods and therefore cannot bring the couriers within the protective carapace of the Act's section 1 exemption."). So the transportation-worker defense—to the extent it is being asserted—does not adequately put the enforcement of the agreement in issue.

Because Bryant has not made a proper showing under Rule 56(d) and because discovery into this defense does not adequately put the agreement in issue or change the Court's ruling, the Court denies Bryant's request for discovery into her "role in the transportation of goods in interstate commerce[.]"

### 3. Relationship between Defendants and GT Pizza

Defendants focus their motion to compel arbitration on establishing whether they are entitled to enforce the arbitration agreement between Bryant and Domino's franchisee, GT Pizza, though they are not parties to the agreement. (*See generally* ECF No. 16.) Accordingly, Bryant asks for discovery into the relationship between Domino's and GT Pizza. (ECF No. 26, PageID.434.)

As was the case with the transportation-worker exception, Bryant's request for discovery into this relationship is deficient under Rule 56(d). She once again does not name the material facts she hopes to learn in discovery and does not explain what specific discovery she would seek in furtherance of those material facts other than

11

"written discovery requests and . . . depositions[.]" (*See* ECF No. 26-1, PageID.445.) Bryant simply states she "should be afforded the opportunity to conduct discovery as to the relationship between Defendants and GT Pizza, Inc." (ECF No. 26, PageID.434; ECF No. 26-1, PageID.444 (affidavit stating, "discovery is needed as to the relationship between Defendants and franchisee GT Pizza, Inc. and whether the promises made in the arbitration agreement by Plaintiff Bryant and GT Pizza, Inc. were intended to extend to Defendants.").) This is insufficient.

Moreover, the Court does not believe further discovery is necessary to decide this issue. *See Boykin*, 3 F.4th at 841 ("Courts have recognized that a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question."); *see also Plott*, 71 F.3d at 1196 (discussing whether "the desired discovery would have changed the ruling below").

Defendants' seek to invoke a species of equitable estoppel to enforce the agreement. "Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration. . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Liedtke v. Frank*, 437 F. Supp. 2d 696, 698–99 (N.D. Ohio 2006) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)); *Arthur Andersen*, 556 U.S. at 631 ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the

corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel[.]"). And Ohio law—which applies to the claims here[1]—applies equitable estoppel in similar circumstances, too. *See I Sports v. IMG Worldwide, Inc.*, 813 N.E.2d 4, 9 (Ohio Ct. App. 2004) ("The second circumstance under which equitable estoppel is applied arises when the signatory to the contract alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." (internal citations omitted)).

Courts have applied this theory of equitable estoppel to arbitration agreements that arise in the FLSA context. Specifically, when a plaintiff proceeds on a joint-employer theory of liability under the FLSA, courts have found that their allegations amount to concerted and interdependent conduct. *See, e.g.*, *Townsend v. Stand Up Mgmt., Inc.*, No. 1:18CV2884, 2019 WL 3729266, at *9 (N.D. Ohio Aug. 8, 2019) ("Plaintiffs assert that Defendants dispute they are joint employers but for estoppel purposes, Plaintiffs cannot assert their claims under the FLSA and Ohio law based on a joint employer theory in their Complaint but then challenge their joint employer allegations in order to defeat arbitration."); *Steel-Rogers v. Glob. Life Sci. Sols. USA, LLC*, 624 F. Supp. 3d 10, 19 (D. Mass. 2022) ("Plaintiff's claims are based on an alleged joint employment by GLS and Kelly, and stemmed from the arbitration agreement that specifically covered employment-related claims[.]"); *Green v. Mission Health Communities, LLC*, No. 3:20-CV-00439, 2020 WL 6702866, at *8 (M.D. Tenn.

---

[1] Both parties cite Ohio law as applicable to the issues in this motion. (ECF No. 26, PageID.436; ECF No. 16, PageID.294.)

Nov. 13, 2020) ("However, other courts around the country have almost uniformly concluded that the plaintiff in this situation, particularly when the plaintiff alleges joint employment, is estopped from avoiding arbitration with the non-signatory."); *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388, 399 (D. Ariz. 2017) (finding allegations of joint employment sufficient to conclude that "alternative estoppel is appropriate and the nonsignatory Defendants here may invoke the arbitration provisions of the Agreements"). Importantly, Bryant does not attempt to argue that this law does not apply.

     Here, it is undisputed that Bryant is alleging that Defendants are joint employers with GT Pizza and other franchisees. (ECF No. 1, PageID.2 ("Domino's Pizza, Inc; Domino's Pizza Franchising, LLC and Domino's Pizza, LLC jointly employed Plaintiff and similarly-situated delivery drivers at all times relevant."); *id.* at PageID.18 ("At all relevant times, Domino's Pizza, Inc.; Domino's Pizza Franchising, LLC; and Domino's Pizza, LLC employed Plaintiff and similarly situated employees as both 'single employers' and 'joint employers'").) Indeed, Bryant has alleged that "Domino's controls the actual labor needs of franchise stores, labor budget and allocation for franchise stores, employees' job duties at franchise stores, behavioral policies and procedures at franchise stores, employee training at franchise stores, supply of food, products, and training at franchise stores, advertising and marketing at franchise stores, and the overall operational system and budget of franchise stores, including the JWG restaurants and the Rolling in the Dough restaurants." (ECF No. 1, PageID.22.) In other words, Defendants' control over GT

14

Pizza is the means by which they are now allegedly liable to Bryant. So it appears that as a matter of law, Bryant has alleged Defendants acted in substantial interdependence and concert with GT Pizza such that Defendants may compel her to arbitrate her claims based on her agreement with GT Pizza.

And the arbitration agreement itself reflects an intent to cover entities beyond GT Pizza. *See Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) ("Under Ohio law, '[w]hen confronted with an issue of contract interpretation, [a court's] role is to give effect to the intent of the parties.'" (quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.,* 953 N.E.2d 285, 292 (Ohio 2011))). The agreement states that "both the Company and Team Member agree that any claim, dispute, and/or controversy that the Company or the Team Member may have against the other shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, 9 U.S.C. Sections 1-16." (ECF No. 16-3, PageID.364.) The agreement defines "Company" to include "GT Pizza, Inc., d/b/a Domino's Pizza, and includes its parents, subsidiaries, affiliates, predecessors, successors and assigns, their (including the Company's) respective owners, directors, officers, managers (both direct and indirect), team members, vendors, and agents." (*Id.*) So the text of the agreement suggests that it is not just limited to GT Pizza and Bryant and goes so far as to refer to Domino's.

Further—according to the above analysis and Bryant's allegations—it appears that Defendants fall under the "affiliate" category in the agreement. Ohio law provides that affiliate "means a person that directly, or indirectly through one or more

15

intermediaries, controls, is controlled by, is under common control with, or acts in concert with, a specified person." Ohio Rev. Code § 1704.01(C); *see also Int'l Confections Co., LLC v. Z Cap. Grp., LLC*, No. 22-3403, 2023 WL 335285, at *2 (6th Cir. Jan. 20, 2023). The reference to "person" includes a corporation or a limited liability company, like Defendants. *See id.* at § 1701.01. As explained, Bryant has alleged that Defendants' control of GT Pizza resulted in violations of the FLSA. (*See, e.g.*, ECF No. 1, PageID.18, 22, 26 ("By mandating the franchise stores operate on a shoestring budget according to their own detailed policies and guidelines, Domino's controls the terms and conditions of Plaintiff's employment and the employment of similarly situated delivery drivers.").) Bryant has also alleged that Defendants may have been a vendor of GT Pizza. (*Id.* at PageID.21 ("Defendants operate 21 supply chain facilities across the United States which Defendants use to supply the dough and other ingredients which Domino's uses to serve its customers at Defendants' franchise stores. In other words, in addition to the 11.5% of gross receipts that are kicked up to Defendants under the [franchise agreement], Defendants have its stores purchase their necessary inventory from Domino's supply chain.").) So by the terms of the agreements and Bryant's allegations, Defendants are affiliates or vendors of GT Pizza, and equitable estoppel prevents Bryant from proving otherwise without contradicting her own allegations. And at bottom, Bryant has not attempted to argue that her allegations do not amount to showing Defendants are affiliates or vendors, or that equitable estoppel should not apply as a matter of law. She did not need discovery to do so.

For those reasons, the Court finds that Bryant has not adequately shown a need for discovery under Rule 56(d) or that discovery is needed to refute Defendants' estoppel-based argument.

### 4. Unconscionability

Finally, Bryant asks for discovery to "develop a factual record as to both procedural and substantive unconscionability." (ECF No. 26, PageID.436.)

Under Ohio law, "[u]nconscionability 'embodies two separate concepts: (1) unfair and unreasonable contract terms, i.e., 'substantive unconscionability,' and (2) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., 'procedural unconscionability[.]'" *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 365 (6th Cir. 2014) (quoting *Collins v. Click Camera & Video, Inc.,* 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993)). Ohio law requires both forms of unconscionability to be proven before a contract is invalidated. *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009).

Bryant has barely placed substantive unconscionability at issue. *See Boykin*, 3 F.4th at 841. For starters, she has not named a single provision that she believes is unconscionable. As noted, substantive unconscionability "involves consideration of the terms of the agreement and whether they are commercially reasonable." *Eastham*, 754 F.3d at 366. So Bryant's failure to state which term or terms she believes are unconscionable in the contract appears to doom any argument that she has a viable unconscionability defense that merits discovery. Bryant does not need discovery to state what is unconscionable about the agreement.

And though Bryant has provided a declaration stating she has "never seen the document entitled 'Arbitration Agreement' before" this litigation and that she did not sign the full agreement (ECF No. 35-1, PageID.497), she only did so in response to the show-cause order from this Court about a completely different issue (ECF No. 33). Put differently, Bryant's affidavit is not even properly part of her Rule 56(d) discovery request.

Further, her declaration concedes that she signed her "name at the bottom of the document entitled 'Acknowledgment of Arbitration,' which was presented to [her] as a stand-alone document." (ECF No. 35-1, PageID.497.) As such, at the very least, Bryant has undisputedly agreed to the following: "I understand that this arbitration agreement contains an agreement to arbitrate. After signing this document, I understand that I will not be able to bring a lawsuit concerning any dispute that may arise which is covered by *the arbitration agreement*. My signature below attests to the fact that I have read, understand, and agree to be legally bound to *all of the above terms*. I understand that, unless I timely send the opt-out letter referenced above to the proper addressee, I will be required to arbitrate *all disputes with the company that are covered by this arbitration agreement*, and understand that this arbitration agreement contains a waiver of jury trial." (ECF No. 16-3, PageID.371 (emphases added).) In other words, it appears that Bryant acknowledges she consented to arbitration of the claims covered by the agreement and that she knew an arbitration agreement existed given the references in the page she reviewed and signed. This distinguishes her situation from others where the validity of the signature was

18

challenged. *Cf. Bazemore v. Papa John's U.S.A., Inc.*, 74 F.4th 795, 797 (6th Cir. 2023) ("Bazemore responded with his own declaration, swearing under penalty of perjury that (before this lawsuit) he 'had never seen' the agreement and 'had never heard about it.' Bazemore also said, among other things, that his login credentials 'were clearly made up of demographic information' available from his application, and that he had seen his manager log in for Bazemore and other delivery drivers 'to complete training materials' for them.'").

Nevertheless, a factor of substantive unconscionability is "the ability to accurately predict the extent of future liability." *Hayes*, 908 N.E.2d at 414. If for some reason Bryant is not bound by the full terms of the arbitration agreement through incorporation by reference, it is possible that the terms on the page she signed did not give her a full picture of what she was agreeing to. So the Court finds that Bryant is entitled to limited discovery on the issue of her access to the full arbitration agreement.

As for procedural unconscionability, one issue is whether the party could not "obtain [the] desired product or services except by acquiescing" to the contract. *Eastham*, 754 F.3d at 366. Here, there is no dispute that Bryant could have opted out of the arbitration agreement. (ECF No. 16-3, PageID.371.) But Bryant requests discovery on how opt-out requests are handled. As the question of whether Bryant could have opted out unconditionally is relevant to procedural unconscionability, the Court will allow limited discovery on that issue, too.

## III.

In sum, the Court largely denies Bryant's request for discovery under Rule 56(d) with two narrow exceptions. The parties may engage in discovery as to Bryant's access to the full arbitration agreement and as to any consequences that may arise from opting out of the arbitration agreement. The Court is permitting no other discovery to take place at this time. The parties will have until September 21, 2023 to complete discovery into these issues.

Accordingly, the Court also DISMISSES WITHOUT PREJUDICE Defendants' motion to compel arbitration (ECF No. 16) while the parties engage in discovery. Defendants may renew their motion to compel arbitration no later than September 28, 2023. Bryant's response will be due on October 5, 2023.

Any matter already analyzed by the Court in this order will not be reconsidered.

SO ORDERED.

Dated: August 24, 2023

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE