## UNITED STATED DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SARAH BRYANT, on behalf of
herself and others similarly situated,

        Plaintiff,

   -vs-

DOMINO'S PIZZA, INC.,
DOMINO'S PIZZA FRANCHISING
LLC, and DOMINO'S PIZZA LLC,

      Defendants.

Case No. 2:22-cv-11319-LJM-APP

Honorable Laurie Michelson
Mag. Judge Anthony Patti

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR ISSUANCE OF ORDER TO SHOW CAUSE WHY THE PROPOSED NEW PLAINTIFFS SHOULD NOT BE COMPELLED TO ARBITRATE

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether Plaintiff's proposed amended complaint would be futile, warranting the denial of Plaintiff's motion for leave to file an amended complaint, where the four individuals named as plaintiffs in the proposed amended complaint agreed to arbitrate the claims set forth in that complaint?

DEFENDANTS' ANSWER: Yes.

2.      Whether, in light of the delegation clause set forth in each of their respective arbitration agreements, the proposed new named plaintiffs should be required to show cause why they should not be compelled to arbitrate?

DEFENDANTS' ANSWER: Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020)

*The Detroit Edison Co. v. Burlington Northern and Santa Ry. Co.*, 442 F. Supp. 2d 387 (E.D. Mich. 2006)

## **INTRODUCTION**

Defendants Domino's Pizza, Inc., Domino's Pizza Franchising LLC and Domino's Pizza LLC (collectively, "Defendants") submit this Response in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 45). Defendants urge denial of Plaintiff's Motion because, after 19 months of litigation and extensive (and ultimately unnecessary) motion practice, Plaintiff has *still* not been able to locate a single proposed named plaintiff who did not agree to arbitrate the claims at issue. Because (a) none of the proposed new named plaintiffs have the right to litigate their claims in this (or any other) Court, (b) some of those "new" plaintiffs have already settled and released the very claims pled in the proposed amended complaint, and (c) some of the proposed plaintiffs are currently litigating these same claims against other defendants in a different action in this Court, Plaintiff's proposed amendment would be futile, and her Motion should be denied.

In the alternative, because the proposed plaintiffs' arbitration agreements all contain a delegation clause, Defendants request that, to avoid further unnecessary motion practice, the Court enter an Order requiring these proposed new named plaintiffs to show cause why they should not be compelled to arbitrate their claims.

## RELEVANT BACKGROUND FACTS

**A.      Plaintiff's Allegations and Defendants' Motion to Compel Arbitration**

As the Court will recall, this lawsuit was first filed in June of 2022 by Plaintiff Sarah Bryant. (ECF No. 1.) Bryant, who worked as a delivery driver for a single franchised Domino's® store in Ohio for 11 months (ECF No. 23, PageID.394), claimed that she and every other delivery driver who worked at the more than 6,600 Domino's stores nationwide (95% of which are owned by independent franchise owners) failed to receive minimum and overtime wages as required by the Fair Labor Standards Act ("FLSA") because they were not "adequately reimbursed" for "their automobile expenses or other job-related expenses." (ECF No. 1, PageID.11.) Seeking to represent a collective comprised of these hundreds of thousands of delivery drivers, Bryant claimed that Defendants—who did not hire, fire, or determine the wages or reimbursement rates of *any* of these drivers—were nonetheless liable for these alleged wage violations on theory they were the "joint employers" of all these employees. *But see In re Domino's*, Case No. 16-CV-2492 (AJN)(KNF), 2018 WL 4757944, at **8-9 (S.D.N.Y. Sept. 30, 2018) (concluding these same allegations did not support joint employment claim as a matter of law).

On September 9, 2022, Defendants filed a Motion to Compel Arbitration of Bryant's claims. (ECF No. 13.) But Bryant did not respond to that Motion on the merits. Instead, on September 27, 2022, Bryant filed a Motion for Status Conference

ACTIVE\1606675432.3

(ECF No. 17.) That Motion claimed that because "motions for conditional certification are heard before disputed motions to compel arbitration" (*id*. at PageID.373), Defendants' Motion was premature, and should be stayed, until this Court ruled on her "*anticipated* Motion for Conditional Certification." *Id*. (emphasis added). By Order dated October 25, 2022, this Court denied Bryant's Motion and ordered her to respond to Defendants' Motion by November 15, 2022. (ECF No. 23, PageID.396, 398.)

She did not file the ordered response. On November 15, 2022—two months after Defendants' Motion to Compel was filed—Bryant instead filed a motion (ECF No. 26) claiming she needed discovery on a variety of issues (such as whether she was a "transportation worker" engaged in interstate commerce for purposes of Section 1 of the Federal Arbitration Act) before she could respond to Defendants' Motion on the merits.

Although Defendants opposed that motion on the grounds that the discovery Bryant was belatedly seeking was irrelevant (ECF No. 30), her request was ultimately rendered moot. On July 13, 2023, this Court issued an Order noting that Bryant's arbitration agreement appeared to contain a delegation clause. (ECF No. 33, PageID.485.) Because such clauses make a non-signatory's ability to enforce an arbitration agreement a question for the arbitrator, this Court ordered Bryant to show

cause "why the Court should not compel her to arbitration based on the delegation clause in her agreement." (ECF No. 33, PageID.486.)

Bryant's response to the Order to show cause claimed she was not bound by the delegation clause because she allegedly never saw it. (ECF No. 35.) In response, Defendants noted that Bryant's alleged defense, while legally deficient, was irrelevant as it concerned her arbitration agreement.[1] Although the presence of a delegation clause would ordinarily make Defendants' ability to compel arbitration a question for the arbitrator (*see Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020)), Bryant's agreement likely did not contain the "clear and unmistakable" evidence needed to show the parties agreed to have an arbitrator decide gateway issues. *Blanton*, 962 F.3d at 844. That is because while one section of her Arbitration Agreement expressly required arbitration of "[a]ny claim, dispute, and/or controversy relating to the scope, validity, or enforceability of this Arbitration Agreement" (ECF No. 16-3, PageID.365), another stated that "[q]uestions of arbitrability, including the validity of this agreement … shall be decided by a court, not by an arbitrator." (*Id*. at PageID.367, ¶E.) As shown below, this inconsistency is not present in the arbitration agreements of the proposed new named plaintiffs.

---

[1]     Defendants also noted (as did the Court in ruling on Bryant's Motion for Discovery), that Bryant first raised this alleged defense "in response to the show-cause order from this Court about a completely different issue …." (ECF No. 37, PageID.530.)

ACTIVE\1606675432.3

Without the requisite delegation clause, this Court proceeded to address both Defendants' Motion to Compel and Bryant's motion for discovery. Denying the former motion without prejudice and "largely" denying the latter (ECF No. 37, PageID.532), this Court permitted the parties to take expedited discovery "as to Bryant's access to the full arbitration agreement and as to any consequences that may arise from opting out of the arbitration agreement." (*Id*.) When that was done, Defendants could renew their Motion to Compel Arbitration. (*Id*.)[2]

## B.   Bryant Abandons Her Opposition to the Motion to Compel and Is Ordered to File an Amended Complaint with a New Named Plaintiff

Bryant never took discovery on any of these issues. On September 21, 2023, shortly after Defendants noticed Bryant's deposition, Plaintiff's counsel stipulated "that the claims raised by Sarah Bryant in this matter are required to be, and shall be submitted to individual arbitration in accordance with the terms of the arbitration agreement." (ECF No. 38.) By a Text-Only Order dated September 25, this Court dismissed Bryant's claims without prejudice and gave the parties 30 days "to stipulate to an amended complaint or a new named plaintiff, or to advise the Court

---

[2]     The Court also ruled that Domino's was entitled to enforce Bryant's arbitration agreement on equitable estoppel grounds, and as a vendor and/or affiliate of the signatory to the arbitration agreement. (*See* ECF No. 37, PageID.528 ("[B]y the terms of the agreements and Bryant's allegations, Defendants are affiliates or vendors of [Bryant's employer and the signatory to the arbitration agreement], and equitable estoppel prevents Bryant from proving otherwise without contradicting her own allegations.")). The Court made clear these rulings would "not be reconsidered." (*Id*. at PageID.532.)

5

as to why the case should not be dismissed." The parties subsequently stipulated to extend that deadline for 60 days—*i.e.*, until January 10, 2024—so they would have a better opportunity to exchange information about the opt-ins and to facilitate "the collection and exchange of documents regarding the opt-in plaintiffs, identification of which opt-ins Defendants claims [sic] are subject to arbitration, and production of the relevant arbitration agreements." (ECF 39, PageID.536.)

## C. The Information Plaintiff Provided About the Opt-Ins Was Largely Incomplete and Inaccurate

On October 17, 2023, Defendants emailed Plaintiff's counsel (David Blanchard) to advise him that, while the overwhelming majority of the opt-ins had signed arbitration agreements, Defendants were not able to determine which (if any) had not agreed to arbitrate because (i) certain opt-ins' names were too common to be searched (including proposed new plaintiffs Patrick Barry and John Carroll), and (ii) others, like opt-in Jessica Majewski, apparently never worked for any Domino's franchisee. (*See* the Declaration of Norman Leon ["Leon Decl.] at ¶ 2; a copy of the Leon Decl. is annexed hereto as Exhibit 1.) For these individuals, Defendants asked Plaintiff to provide "the names of the franchisee(s) for whom they worked, the locations of the stores they worked in, and their dates of employment." (*Id.*)

On November 14, 2023, Plaintiff provided some information on a few of these individuals. (*Id*. ¶ 3.) Over the coming weeks, Defendants attempted to determine whether these and other opt-ins had entered into arbitration agreements that covered

6

these claims and, if so, whether the franchisees who employed these individuals would voluntarily produce those agreements. On December 12, 2023, Defendants sent Plaintiff's counsel the arbitration agreements they were able to obtain from the franchisees for whom the opt-ins worked. (*Id.*)

Despite this exchange of information, the identity of whom Plaintiff intended to list as a named plaintiff remained a mystery until late in the day on January 8— two days before the deadline for filing an amended complaint—when Plaintiff advised Defendants of the four individuals who would be named as proposed new plaintiffs. (*Id.* ¶ 4.) The emails Plaintiff sent identifying these individuals, and a review of the allegations in the proposed amended complaint—which was not shared until minutes before it was filed on January 10 (*id.*)—showed that the information that was originally provided about the opt-ins was, unfortunately, inaccurate or incomplete, particularly as it concerned the proposed new named plaintiffs. (*Id.* ¶ 5.)

For example, while the proposed amended complaint states that proposed new plaintiff Justin Carroll worked for a franchisee between 2018 and 2020, the information Plaintiff previously sent stated he worked between 4/4/18 and 8/8/18— well outside the applicable limitations period. (*Id.* ¶ 6.) Plaintiff's January 8 email also advised Defendants that the opt-in named Jessica Majewski (of whom Defendants could not locate any records) was previously known by a different name

(Walter Majewski). (*Id.*) Myron Talley, another proposed new named plaintiff, was not mentioned by Plaintiff in any communications until January 8. (*Id.*)

**D.     The Proposed New Named Plaintiffs Have Agreed to Arbitrate, in Some Cases Have Settled These Very Claims, and in One Case Are Currently Litigating These Claims Before a Different Judge in this Court**

Based on the additional information set forth in Plaintiff's email and the proposed amended complaint, Defendants have discovered there are a host of barriers to any of the proposed new plaintiffs maintaining suit in this Court:

- <u>John Carroll</u>: Plaintiff's proposed amended complaint alleges that Carroll worked as a delivery driver for a franchised Domino's store in West Virginia until March 2020. (ECF No. 45-1 ¶ 78.) On September 21, 2018, Carroll entered into an arbitration agreement with his actual employer (5 Star Pizza, LLC ["5 Star"]) in which he agreed to arbitrate, among others, any claim "regarding payment of wages, compensation practices, or benefit plans, including, but not limited to, claims for payment or demand for reimbursement of alleged expenses relating to employment with the Company." (*See* the Declaration of Claudia Lenz ["Lenz Decl."], which is attached hereto as Exhibit 2, at ¶¶ 2-3.) As in Bryant's arbitration agreement, the term "Company" is defined to include 5 Star and "its parents, subsidiaries, affiliates, predecessors, successors and assigns, . . . [and] vendors and agents." (*Id.*) Carroll's arbitration agreement provides that arbitration is to be conducted in accordance with the Employment Rules of the American Arbitration Association on an individual

basis and that the obligation to arbitrate encompasses "[a]ny claim, dispute, and/or controversy relating to the scope, validity, or enforceability of th[e] Arbitration Agreement." (*Id.*)

In October of 2019, Carroll (through his then-counsel) sent 5 Star a letter alleging he was not properly reimbursed for mileage expenses. (Lenz Decl. ¶ 4.) On February 5, 2020—shortly after the end of his employment with 5 Star—Carroll entered into a settlement agreement with 5 Star which "resolve[d] any and all disputes arising from or relating to Justin Carroll's employment with 5 Star" and released 5 Star and certain other "Released Parties" from "all actions, causes of actions, claims and demands whatsoever, whether in law or in equity, and whether currently known or unknown arising out of or related to … [Carroll's] claims under the Fair Labor Standards Act ("FLSA") …." (*Id.* ¶ 4.) The term "Released Parties" is defined to include 5-Star and its "past, present, and future parents, ***franchisors***, subsidiaries, divisions, partnerships, affiliates, insurers, and other related entities (closely or remotely connected) …." (*Id.*; emphasis added.)

- <u>Patrick Barry</u>: Barry claims to have worked at two different franchised stores in Massachusetts between February 2018 and June 2020. (ECF No. 45-1 ¶ 104.) On March 26, 2018, Barry entered into an arbitration agreement with his former employer (a franchisee named "Jozon Enterprises"). The arbitration agreement covers both the same claims (*i.e.*, any claim "regarding payment of wages,

compensation practices … including, but not limited to, claims for payment or demand for reimbursement of alleged expenses") and the same parties as Carroll's agreement (*i.e.*, Jozon and "its parents, subsidiaries, affiliates, predecessors, successors and assigns, . . . [and] team members, vendors and agents"). (*See* the Declaration of Joseph Zonfrilli, which is annexed hereto as Exhibit 3, at ¶ 2.) And like Carroll's and Bryant's agreements, Barry's arbitration agreement provides that arbitration is to be conducted in accordance with the Employment Rules of the American Arbitration Association on an individual basis and that the obligation to arbitrate encompasses "[a]ny claim, dispute, and/or controversy relating to the scope, validity, or enforceability of th[e] Arbitration Agreement." (*Id.*)

- <u>Walter Majewski f/k/a Jessica Majewski</u>: Majewksi claims to have worked for a single franchised Domino's store in Ohio between March 2020 and November 2020. (ECF No. 45-1, ¶128.) On October 15, 2020, Majewski entered into an arbitration agreement with the franchisee for whom he worked in which he agreed to arbitrate the same claims set forth in Bryant's, Carroll's and Barry's arbitration agreements against the "Company." (*See* the Declaration of Anthony Satterwhite, which is annexed hereto as Exhibit 4.)[3] Majewski's arbitration agreement defines

---

[3]    In preparing this Opposition, Defendants noticed that Plaintiffs advised Defendants of Jessica Majewski's name change in early November, before Mr. Blanchard sent his January 8, 2024 email advising Defendants of Walter Majewski's name change and the fact that Majewski would be a proposed named plaintiff. Mr. Leon was out of the office on extended medical leave when that first email was sent

the term "Company" to include "Mile High Pizza Company, LLC, and its parents, *franchisors*, subsidiaries, affiliates, predecessors, successors and assigns, their (including the Company's) respective owners, directors, officers, managers (both direct and indirect) team members, *vendors*, and agents." (*Id.*; emphasis added.) Majewski's arbitration agreement also contains the same delegation clause as those referenced above, delegating to an arbitrator "Any claim, dispute, and/or controversy relating to the scope, validity, or enforceability of th[e] Arbitration Agreement."[4]

• <u>Myron Talley</u>: Although Talley was first disclosed as a potential named plaintiff on January 8, Defendants have since learned that, like Majewski, he is no stranger to either Plaintiff's counsel or the types of claims raised in this suit. In fact,

---

and did not address it, which would likely have enabled Defendants to learn of this arbitration agreement. Defendants regret their failure to respond and produce that agreement earlier.

[4]     Majewski is a practiced hand at bringing the types of claims alleged here. On July 27, 2022 (a month after this suit was filed), Majewski filed (as Jessica Majewski) a substantively identical putative collective action—through some of the same attorneys representing Majewski here (Messrs. Fradin and Simon)—for reimbursement of expenses Majewski incurred delivering pizzas for a Pizza Hut franchisee between December 2018 and March 2020. (N.D. Ohio Case No. 1:22-cv-01327-CEF.) About a week after that (on August 5, 2022), Majewski filed yet another putative collective action (again through Messrs. Simon and Fradin) for reimbursement of expenses Majewski allegedly incurred delivering pizzas for a different Pizza Hut franchisee between October 2019 and February 2020 and August 2021 and October 2021. (N.D. Ohio Case No. 1:22-cv-01391-CAB). The latter suit was recently dismissed and Majewski was ordered to arbitrate Majewski's claims. (*Majewski v. Hallrich, Inc.*, Case No. 1:22-cv-01391-CAB, slip op. (N.D. Ohio Sept. 26, 2023)).

ACTIVE\1606675432.3

Talley is currently prosecuting these exact claims, in this very Court, in a lawsuit Plaintiff's counsel (Mr. Blanchard) recently filed against Talley's actual employer. On June 27, 2023, Mr. Blanchard filed a putative class and collective action against several former Domino's franchisees alleging that those franchisees—including the franchisee for whom Talley worked—failed to reimburse their delivery drivers for the reasonably approximate costs of the use of their vehicles. That case, entitled *Barker, et al. v. STA Management, LLC, et al.*, Case No. 2:23-cv-11542, is pending before Judge Edmunds.[5] Talley opted into, and became a plaintiff in that suit, on July 13, 2023. (*See* ECF No. 3, PageID.53 ¶ 11, in Case No. 2:23-cv-11542.)

A plaintiff litigating the same claims against different entities before different judges in the same court at the same time raises a host of concerns (including, without limitation, questions of judicial economy and the possibility of inconsistent judgments). But those implications are heightened here because the allegations underlying this suit are directly at odds with those that Talley is pressing in *Barker*. In this suit, Talley alleges Defendants should be deemed joint employers, and liable for every franchisee's alleged wage violations, because Defendants supposedly control the pay and reimbursement policies at all franchised Domino's® stores. (*See*

---

[5]   Mr. Blanchard previously filed an identical suit in this Court against the same franchisees, entitled *Mata v. STA Management, LLC, et al.*, Case No. 19-cv-1162. The collective in *Barker* purports to be comprised of the employees of those franchisees who allegedly failed to receive notice of and an opportunity to opt-in to the *Mata* lawsuit.

ECF No. 45-1, Page ID.567 ¶ 28, alleging Defendants "appl[y] or cause[] to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, and reimbursement of automobile expenses."; *accord* ECF No. 45-1 at ¶¶ 29, 35-6, 42-3.) But in *Barker*, Talley alleges the opposite. In *Barker*, Talley repeatedly alleges that: (i) the franchisees and the franchisees' owners "determined rates and methods of pay and/or expense reimbursement" (ECF No. 3, PageID.4-5 ¶¶ 8, 10-14, in Case No. 2:23-cv-11542); (ii) the franchisees employed supervisors and managers who were responsible for, among other things, "setting driver reimbursement rates and generally responsible for paying drivers in accordance with federal law" (*id.* at PageID.6 ¶¶ 15-16); and (iii) the franchisees' owners "ultimately control compensation of employees and Defendants' pay practices" (*id.* at PageID.8 ¶ 23).

Such an apparent willingness to play fast and loose with the court system brings into question not only whether Talley is an adequate representative of the collective he seeks to represent, but makes clear he is not similarly-situated to the members of that putative collective. Yet Talley's attempt to be a named plaintiff in this suit suffers from another insurmountable hurdle: he, like the other Plaintiffs, agreed to arbitrate his claims. When Talley first accepted employment with Court Pizza, LLC, he acknowledged in writing that he had received a copy of that

13

franchisee's Team Member Handbook, that he read and understood the Handbook, and that the franchisee had:

> the right to add, change, delete or interpret any of the provisions contained in the Team Member Handbook at any time, with or without notice, and that regardless of the date of hire, all team members are subject to these updates.

(*See* the Declaration of Amer Asmar, a copy of which is annexed hereto as Exhibit 5, at ¶ 2.) In 2020, prior to the termination of Talley's employment, Court Pizza issued a revised handbook which contained an arbitration agreement. (*Id*. ¶ 3.) *See*, *e.g.*, *Seawright v. Am. Gen. Fin. Servs., Inc*., 507 F.3d 967, 970 (6th Cir. 2007) ("We hold that [plaintiff's] knowing continuation of employment after the effective date of the arbitration program constituted acceptance of a valid and enforceable contract to arbitrate."). That agreement required Talley to submit to arbitration, among others (i) "[a]ll claims, disputes, and/or controversies under federal, state, or local laws regarding payment of wages, compensation practices … including, but not limited to, claims for payment or demand for reimbursement of alleged expenses relating to employment with the Company," and (ii) "[a]ll claims, disputes, and/or controversies relating to the scope, validity, or enforceability of this Arbitration Agreement." (*Id*. ¶ 3.)[6]

---

[6] The term "Company" is defined to include STA Management, LLC and "its holding companies, parents, *franchisors*, subsidiaries, divisions, affiliates, insurers, predecessors, successors and assigns, their (including the Company's) respective

14

E.     **Domino's Driver App**

Aside from any agreements the proposed plaintiffs entered into with the franchisees for which they worked, it appears that Mr. Talley—and potentially every other delivery driver—also entered into an arbitration agreement directly with Defendants. In or around the last quarter of 2020, Domino's Pizza LLC made a driver app generally available to franchisees. The app allows delivery customers to track the location of their orders. (*See* the Declaration of Mike Grange ["Grange Decl."] ¶ 2; Exhibit 6.) To use the app, a delivery driver must enter their ID and Password and click a box which indicates their assent to Domino's Pizza LLC's Terms of Use, which are accessed using the embedded hyperlink. (*Id*. ¶ 2.) The full Terms of Use, which are annexed to the Grange Decl., contain an arbitration agreement which provides:

> ANY CLAIM, DISPUTE, AND/OR CONTROVERSY ARISING OUT OF OR RELATING IN ANY WAY TO YOUR USE OF THE APPLICATION, THESE TERMS OF USE, OUR PRIVACY POLICY, OR THE SCOPE OR VALIDITY OF THIS ARBITRATION PROVISION SHALL BE SUBMITTED TO AND RESOLVED EXCLUSIVELY BY BINDING ARBITRATION, RATHER THAN IN COURT.

Talley agreed to these Terms of Use each time he logged into the app, which he did starting in December 2020 and continuing through May 2021. (*Id*. ¶ 3.)

---

owners, directors, officers, shareholders, managers (both direct and indirect), team members, employees, *vendors*, *contractors*, and agents." (*Id*.)

ACTIVE\1606675432.3

# ARGUMENT

## I.    Plaintiff's Proposed Amendment Would Be Futile

"Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been served, 'a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.'" *Remark Home Designs, LLC v. Oak Street Condo Projects, LLC*, Case No. 16-cv-14305, 2017 WL 5714489, at *2 (E.D. Mich. Aug. 1, 2017) (Michelson, J.) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Such leave, however, is not automatic." *Lewis v. Michigan Occupational Safety and Health Admin.*, No. 13-10889, 2013 WL 5998831, at *2 (E.D. Mich. Aug. 13, 2013) (Michelson, J.). "Indeed, 'a motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Id.* (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)); *accord Dankovich v. Keller*, Case No. 16-13395, 2017 WL 4081852, at *3 (E.D. Mich. Sept. 15, 2017) (Michelson, J.) ("A motion to amend the pleadings should be denied if the amendment would be futile."). "An amendment is considered futile if it would not withstand a motion to dismiss." *Dankovich*, 2017 WL 4081852, at *3 (citing *Veasley v. Federal Nat. Mortg. Ass'n*, 623 F. App'x 290, 297 (6th Cir. 2015)).

ACTIVE\1606675432.3

The district courts in this Circuit are overwhelmingly aligned in recognizing that an amendment is futile if the claims in the proposed amendment must be arbitrated. *See*, *e.g.*, *The Detroit Edison Co. v. Burlington Northern and Santa Ry. Co.*, 442 F. Supp. 2d 387, 394 (E.D. Mich. 2006) ("Although the issue has not been addressed by the Sixth Circuit, other courts have found that where the new or revised claims that a party seeks to add by amendment are subject to a binding arbitration agreement, the proposed amendment is futile."); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. CIV.A. 5:11-374-DCR, 2014 WL 1281475, at *10 (E.D. Ky. Mar. 27, 2014) ("Futility has been found to exist where the new claims a party seeks to add through amendment are subject to a binding arbitration agreement."); *Raymond v. Avectus Healthcare Solutions, LLC*, Case No. 1:15cv559, 2021 WL 4295276, at *1 (S.D. Ohio Mar. 30, 2021) (same); *Lee v. Doctor's Associations, Inc*., Civil Action No. 5:16-32-KKC, 2016 WL 7332982, at *3 (E.D. Ky. Dec. 16, 2016) ("Because all of the claims that Lisa asserts in the tendered amended complaint must be arbitrated, her proposed amendments are futile and her motion to amend her complaint will be denied."); *McMahan v. Byrider Sales of Indiana S, LLC*, Civil Action No. 3:17-CV-00064-GNS, 2017 WL 4077013, at *5 (W.D. Ky. Sept. 14, 2017) ("these claims must be arbitrated so that Plaintiff's Motion to Amend would be futile"). The Circuit Courts that have addressed the issue agree. *See Johnson v. Orkin, LLC*, 556 F. App'x 543, at *545 (7th Cir. 2014)

17

("Johnson's proposed amendments [seeking to add Orkin's employees as named defendants] were futile because the arbitration agreements require him to arbitrate not only his claims against the company but also his claims against the company's agents."); *Halliburton & Assocs., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1985) (affirming denial of motion to amend complaint to add federal securities claims that were encompassed by arbitration agreement).

Each of the proposed new named plaintiffs is bound by an arbitration agreement that expressly requires the arbitration of these very claims. Even more, the agreements all contain delegation clauses, which means the proposed plaintiffs must also arbitrate any challenges they have either to the enforceability of their agreements or to Defendants' right (as non-signatories) to enforce those agreements. *See Blanton*, 962 F.3d at 848 (because arbitration agreement incorporated the AAA's Rules, the employee of a franchisee was required to arbitrate whether non-signatory Domino's Pizza Franchising LLC and its affiliates had the right to enforce the arbitration agreement the employee entered into with his employer); *Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) ("Whether a non-signatory can enforce [an] arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant."); *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 356 (6th Cir. 2022) (same). For these reasons, the proposed amendment that seeks to add these individuals as plaintiffs would be futile, and Plaintiff's motion should be denied.

18

II.     **In the Alternative, This Court Should Issue an Order Requiring the Proposed Named Plaintiffs to Show Cause Why They Should Not Be Compelled to Arbitrate**

On July 13, 2023, after an extensive amount of (ultimately unnecessary) motion practice on Bryant's arbitration agreement, this Court entered an Order requiring Bryant to show cause why, in light of the delegation clause in that arbitration agreement, she should not be compelled to arbitrate. (ECF No 33.) If this Court is not inclined to deny outright Plaintiff's motion to amend based on the various infirmities outlined above, then Defendants respectfully submit that, in lieu of requiring the filing of yet another motion to compel arbitration, each of the proposed new plaintiffs first be ordered to do the same as Bryant: show cause why, in light of the delegation clauses in their arbitration agreements, they should not to be compelled to arbitrate. Doing so would conserve both the parties' resources and this Court's time as it will flesh out—before full briefing is submitted—whether there is any good faith dispute regarding the enforceability of these agreements.

<u>**CONCLUSION**</u>

Plaintiff's Motion for Leave to File First Amended Complaint should be denied, or, in the alternative, an Order should issue requiring the proposed new named plaintiffs to show cause why they should not be ordered to arbitrate their claims in accordance with the terms of their arbitration agreements.

By:  */s/ Edward J. Hood*
Edward J. Hood (P42953)
Clark Hill PLC
500 Woodward Avenue, Suite 3500
Detroit, Michigan 38226
Telephone: 313-965-8591
ehood@clarkhill.com

Norman M. Leon
Ill. Bar #6239480
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Telephone: 312-368-2192
norman.leon@us.dlapiper.com

*Counsel for Defendants*

ACTIVE\1606675432.3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SARAH BRYANT, on behalf of herself and others similarly situated,<br><br>   Plaintiff,<br><br>  -vs-<br><br>DOMINO'S PIZZA, INC., DOMINO'S PIZZA FRANCHISING LLC, and DOMINO'S PIZZA LLC, Defendants. | Case No. 2:22-cv-11319-LJM-APP<br><br>Honorable Laurie Michelson<br>Mag. Judge Anthony Patti |

## BRIEF FORMAT CERTIFICATION FORM

I, Edward J. Hood, hereby certify that the foregoing brief complies with Eastern District of Michigan Local Rules 5.1(a), 5.1.1, and 7.1 and Judge Michelson's Case Management Requirements. In particular, I certify that each of the following is true (click or check box to indicate compliance):

 ☒ the brief contains a statement regarding concurrence, *see* LR 7.1(a);

 ☒ the brief, including footnotes, uses 14-point font, *see* LR 5.1(a)(3);

 ☒ the brief contains minimal footnotes and, in all events, no more than 10, *see* Case Management Requirements § III.A;

 ☒ the brief and all exhibits are searchable .pdfs, *see* Case Management Requirements § III.A;

 ☒ the brief is double spaced (except for footnotes and necessary block quotes) with one-inch margins, *see* LR 5.1(a)(2);

 ☒ deposition transcripts have been produced in their entirety and not in minuscript, *see* Case Management Requirements § III.A;

 ☒ if the brief and exhibits total 50 pages or more, a courtesy copy with ECF headers will be sent to chambers, *see* Case Management Requirements § III.B.

ACTIVE\1606675432.3

I also acknowledge that if the Court later finds that these requirements are not met, my brief will be stricken.

s/Edward J Hood
Dated: January 24, 2024