## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JUSTIN CARROLL, PATRICK BARRY,
JESSICA MAJEWSKI, and
MYRON TALLEY, on behalf of
themselves and others
similarly situated,

                Plaintiffs,

v.

DOMINO'S PIZZA, INC.; DOMINO'S
PIZZA FRANCHISING, LLC; and
DOMINO'S PIZZA, LLC,

                Defendants.

Case No. 2:22-cv-11319

Hon. Laurie J. Michelson

---

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AMENDED COLLECTIVE ACTION COMPLAINT

Defense Counsel was given the opportunity and extensive time to identify arbitration agreements that support its affirmative defense. When given the opportunity, they did not produce any contract for any of the proposed named Plaintiffs. Defendants' Response Brief was the first time they have even alleged arbitration agreements. To cover for their own failure to comply with the Court's order, they now attempt to point fingers and even resort to shaming individual litigants. More shocking, Defendants for the *first time* purport to rely on an "Delivery Driver App" Agreement on the platform that every Domino's Driver is required to use.  Domino's had months to raise the Defense but did not.

The rights of opt-in Plaintiffs and absent collective members without notice are too important to allow them to rise or fall based on last minute bait-and switch tactics. As is common in the workplace, most workers do not have any awareness of the on-boarding documents they are required to sign, much less any awareness of "terms of use" embedded in the apps they are required to use for work. Since arbitrability is an affirmative defense, it falls on Defendants to raise it and to do so with competent evidence. Defendants are the only party with that information at their disposal. Plaintiffs should be allowed to proceed and, if necessary, identify new named plaintiffs in 30 days after being provided *all* the alleged arbitration agreements.

## I.    Background

The present dilemma is one of Defendant's own making. Pursuant to the Court's September 25, 2023 Text-Only Order, Plaintiffs set out to identify new lead Plaintiffs who could adequately represent the proposed collective in this FLSA minimum wage dispute. Defendants have been asserting that they have arbitration agreements that bar opt-in plaintiffs' claims throughout this litigation. But, when put to the task and given more than 60 days to respond to the September 25, 2023 Order, they came up short.[1]

When a Defendant asserts a contractual bar to proceeding in Court, they are required at least to produce the alleged contract. Counsel relied on information *provided by Defendants* to identify opt-in Plaintiffs without arbitration agreements with Defendants. Yet now, Defendants claim that each of the proposed Named Plaintiffs do, in fact, have arbitration agreements. After giving Defendants the full amount of time to produce alleged agreements, as of January 8, 2024, Counsel for Defendants have still not produced anything related to any of the proposed named Plaintiffs. The first time Plaintiffs knew about the alleged arbitration agreements

---

[1] After the parties conferred on the process for identifying which opt-ins Defendant's alleged arbitration, on November 14, 2023, Counsel created and mailed a spreadsheet of opt-in information. When no response was heard, Counsel followed up on November 30, 2023 and again on December 8, 2023. It was not until December 12, 2023 that Defense Counsel provided the alleged agreements. Defense Counsel did not ask for any additional information regarding the opt-ins. At no time prior to filing an opposition to leave, did Defense counsel provide (or even claim) that the proposed Plaintiffs were barred by arbitration agreements.

with the proposed lead Plaintiffs was when they read it in Defendants' Response. In fact, Defendants admit they did not provide all of the arbitration agreements applicable to the opt-in plaintiffs, supposedly because some of the opt-in plaintiffs' names were too common. ECF No. 47, PageID 642. The Sixth Circuit has long held that "'[a] response to a pleading must set forth any matter constituting an affirmative defense… [f]ailure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense.'" *Wallace v. Coffee Cty.*, 852 F. App'x 871, 875 (6th Cir. 2021) (citing *Horton v. Potter*, 369 F.3d 906, 911 (6th Cir. 2004) (holding that the Defendant County forfeited the statute of limitations defense when it did not include the defense in its answer).

## II.     Dismissal of the Lawsuit Would be Extremely Prejudicial

In a FLSA collective action, ensuring potential plaintiffs get notice of their rights is an important job. This explains why the Court gave the parties time to provide discovery and find a new lead Plaintiff(s). As recently emphasized by the *Clark* court, it is imperative that timely notice is issued to potential class members. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1013 (6th Cir. 2023). Every day that notice is not issued to potential collective members, their rights are affected. 29 U.S.C. § 216(b). *Id.* at 1013-14 (Bush, J. concurring) (explaining the notice process drives realization of the collective's FLSA rights. "Potential plaintiffs benefit from a FLSA collective action yet hold no responsibility to join it until they

3

receive notice."). The Supreme Court likewise has made clear that FLSA actions require "'accurate and timely notice concerning the pendency of the collective action, so that [plaintiffs] can make informed decisions about whether to participate.'" *Id.* at 1013 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)). Plaintiffs' counsel has acted in earnest to preserve potential collective members' rights. Without lead Plaintiffs there can be no notice. Defense counsel knows this well.

Defendants seek to effectively dismiss this lawsuit based upon arbitration agreements that most employees are probably not aware of nor understand, and that were never produced when given the opportunity to do so. Proposed plaintiffs are no different, and those similarly situated may not have validly consented at all. "In determining whether the parties are required to arbitrate their dispute, the Court must determine **whether there is a valid arbitration agreement** and whether the parties' dispute falls within the scope of the agreement to arbitration." *Dental Assocs., P.C. v. Am. Dental Partners of Mich., LLC*, No. 11-11624, 2011 U.S. Dist. LEXIS 141623, at *6 (E.D. Mich. Dec. 9, 2011) (emphasis added). The *Clark* court warned against curtailing potential opt-ins rights "in abstentia":

> For example, whatever a defendant's records might say, a particular employee—when confronted with such a contention—might testify "under oath that he 'unequivocally' did not consent to or acknowledge an arbitration agreement." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 836, 843 (6th Cir. 2021). Or an employee might argue that his arbitration agreement with the employer lacked

4

consideration, or was the result of fraud, duress, or mistake. *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000); *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Or he might argue that the agreement was procedurally unconscionable— which typically requires a determination whether "the individualized circumstances surrounding each of the parties to a contract [were] such that no voluntary meeting of the minds was possible[.]" *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 365 (6th Cir. 2014) (cleaned up) (applying Ohio law).

*Clark* at 1010-11. This case is a prime example of workers having no recollection of seeing, signing, or consenting to the alleged agreements.

Although this case has been litigated since June of 2022, Defendants *just now* disclosed that they consider in-phone Driver Delivery App agreements to require arbitration of this dispute. To the extent these arbitration agreements are valid (which Plaintiffs contest), Dominos waived their right to assert these alleged App Agreements. It is Defendants' claim that they have agreements with every delivery driver in the U.S. that deprives them of asserting claims in court? Defendants had every opportunity to raise this issue prior to its Response on Plaintiff's Motion for Leave to Amend. If not waived, it is a valid topic for briefing on the merits, and not on a last-minute procedural maneuver.

Defendants are an integral partner in the management of their franchisees and their joint employees, down to tracking every mile driven; providing reimbursement guidelines; and tracking every penny of reimbursement. They claim that they stand in the shoes of the employer for arbitration agreements forced on workers, and then

they disavow the relationship when workers allege they are underpaid. At the least, these issues deserve a determination on the merits.

### III.    Defendants' Response Does Not Provide a Legitimate Reason to Dismiss Plaintiffs' Lawsuit

Defendants raise a number of issues particular to each proposed Named Plaintiff—none of which provide a legitimate basis for this Court to deny leave to file an Amended Complaint. First, Defendants allege that Proposed Plaintiff Justin Carroll entered a settlement agreement with his former Domino's store franchisee. Plaintiffs' counsel would have no way of knowing about the alleged settlement between proposed Plaintiff Carroll and his former store franchisee. And Mr. Carroll, a lay person, cannot be expected to understand how an alleged settlement from 2020 against an entirely different entity would affect his right to recover against Domino's today. Now, for the first time, Defendants allege proposed Named Plaintiffs Patrick Barry and Jessica Majewski signed arbitration agreements barring their claims. Plaintiffs' ability to propose new Named Plaintiffs who have not signed arbitration agreements with Defendants is only as good as Defendants' ability to produce said arbitration agreements.

Defendants admit they had the relevant arbitration agreement for Plaintiff Jessica Majewski and knew about Plaintiff Majewski's prior name, but still failed to provide this information to Plaintiff's counsel. ECF No. 47, PageID 646-47 (fn. 3). Defendants have asserted that Plaintiff Tally's claims are barred by an arbitration

clause contained a handbook that was issued before Plaintiff Tally's employment ended. But, Defendants have produced no evidence that the alleged handbook arbitration agreement was ever presented to Tally in any form (only that the new handbook was "issued"). As stated, the issue of the Driver Delivery App agreements allegedly applying to all Dominos drivers nationwide should be considered waived. If not waived, it should be presented to the Court on a proper motion. The Court's ruling on the enforceability of a provision potentially impacting thousands of workers should not be addressed as an afterthought to a Motion to Amend.

## IV.   <u>CONCLUSION</u>

Defendants have had difficulties in identifying the relevant arbitration agreements and now wants to shift the blame. Of the agreements that were shared with Plaintiffs, there are a substantial number that would not be enforceable. Plaintiffs have a good-faith basis to believe that there are many employees who have legitimate claims in this case. It is imperative that is allowed to proceed, or, in the alternative, to be granted an additional 30 days to identify new lead Plaintiffs, or to order Defendants to show cause why they did not produce known arbitration agreements prior to their opposition to amendment.

Respectfully submitted,

/s/ David M. Blanchard
David M. Blanchard (P67190)
Kelly R. McClintock (P83198)
Counsel for Proposed Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 31, 2024, my paralegal, Natalie Walter, filed the foregoing document using the Court's ECF system, which will provide electronic notice to all of the attorneys of record in the above-captioned matter.

<u>/s/ David M. Blanchard</u>
David M. Blanchard (P67190)
Attorney for Proposed Plaintiffs and
and the Putative Collective