UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH BRYANT et al.,

    Plaintiffs,

v.

DOMINO'S PIZZA et al.,

    Defendants.

Case No. 22-11319
Honorable Laurie J. Michelson
Magistrate Judge Anthony Patti

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND [45]**

    This collective action has been pending for more than a year and a half, but has yet to progress past the complaint stage because the parties cannot identify a named plaintiff who is not subject to an arbitration agreement. After giving the plaintiffs more than three months to find a named representative and amend their complaint, they have proposed four plaintiffs who all have arbitration agreements. So Domino's opposes the motion for leave to amend, arguing amendment would be futile as the four proposed plaintiffs would be required to arbitrate their claims. Plaintiffs do not dispute the existence of these arbitration agreements. But they ask the Court to allow them to proceed, or, in the alternative, to give them even more time to find new lead plaintiffs.

    The Court agrees with Domino's that amendment would be futile and denies the plaintiffs' request for more time to find viable named plaintiffs. Without named plaintiffs, the case cannot progress, so the Court dismisses the case without prejudice

to a future collective action with named plaintiffs who are not required to arbitrate their claims.

I.

On June 14, 2022, Sarah Bryant filed a collective-action complaint against Domino's Pizza, Inc., Domino's Pizza Franchising, LLC, and Domino's Pizza, LLC (collectively "Domino's"). (ECF No. 1, PageID.1.) Bryant was a delivery driver for a Domino's franchise in Ohio and claimed that Domino's "repeatedly and willfully violated the FLSA by improperly taking a tip credit from the wages of delivery drivers, and by failing to adequately reimburse delivery drivers for their delivery-related expenses." (*Id.* at PageID.2.) She alleged that this practice was common across all of Domino's stores. (*Id.*) Several others opted into the action. (*See* ECF Nos. 7, 9, 10, 12.)

Domino's then moved to compel arbitration and dismiss Bryant's complaint. (ECF No. 13.) The Court noticed the arbitration agreement contained a delegation clause, which would justify compelling arbitration even for the gateway question of arbitrability. (ECF No. 33, PageID.484–485.) But Domino's did not raise the issue of delegation in its motion, so the Court issued a show cause order directing Bryant to explain why the Court should not compel arbitration based on the delegation clause. (*Id.* at PageID.486.) In response, Bryant argued there was not clear and unmistakable evidence that the parties agreed to arbitrate arbitrability, so she should not be compelled to arbitrate that threshold issue. (ECF No. 35, PageID.491–494.)

But shortly after, the parties filed a joint stipulation agreeing that Bryant's claims must be arbitrated and would be dismissed without prejudice. (ECF No 38, PageID.533.) Thus, the Court dismissed Bryant's claims and instructed the parties to find a new named plaintiff, or to advise the Court why the case should not be dismissed, within 30 days. (Text-only Order dated September 25, 2023.) The parties stipulated to extend that deadline until January 10, 2024—giving them more than three months to locate a new named plaintiff. (ECF No. 39.)

Plaintiffs' counsel set out to find a new named plaintiff from the opt-in list. On October 17, Domino's counsel emailed plaintiffs' counsel, informing them that "while the overwhelming majority of the opt-ins had signed arbitration agreements" Domino's was not able to identify all of the names on that list within its employment records. (ECF No. 47, PageID.642.) Domino's claims that some names were too common, and some could not be found in its records at all. (*Id.*) So Domino's counsel asked plaintiffs' counsel for more details about the employment history of those opt-ins they could not locate. (*Id.*) A month later, Plaintiffs' counsel provided that information, and Domino's worked to locate the rest of these opt-ins. (*Id.* at PageID.641–642; *see also* ECF No. 48, PageID.718.) On December 12, Domino's sent plaintiffs' counsel the arbitration agreements that it was able to find. (ECF No. 47, PageID.642.)

On January 8, plaintiffs' counsel informed Domino's that Patrick Barry, Justin Carroll, Jessica Majewski, and Myron Talley were the four opt-ins they intended to include as named plaintiffs. (*Id.*) But, says Domino's, this January 8 email—and the

3

complaint filed two days later—showed that some of the information that was originally provided for the opt-ins was inaccurate or incomplete. (*Id.*) And Domino's claims that this January 8 email was the first it had heard of Myron Talley, despite the parties' earlier exchange of information. (*Id.*) With updated information on the new intended plaintiffs' legal names, dates of employment, and franchise locations, Domino's was able to track down Barry, Carroll, Majewski, and Talley, and found that all four signed arbitration agreements with their franchisees that seemingly cover Domino's as a "vendor," "agent," or "franchisor." (*Id.* at PageID.643–649.) Each of these agreements also contains a delegation clause that delegates questions of arbitrability to the arbitrator. (*Id.*)

Additionally, Domino's asserts that, like many of its drivers who were employed after 2020, Talley and possibly the other three proposed plaintiffs signed an arbitration agreement directly with Domino's while using its pizza delivery tracking app. (*Id.* at PageID.650.) That arbitration agreement also included a delegation clause delegating questions of arbitrability to the arbitrator. (*Id.*)

Domino's argues that because the four proposed plaintiffs are subject to arbitration agreements, their motion for leave to amend the complaint should be denied as futile. (*Id.* at PageID.651.) Plaintiffs respond that Domino's did not provide arbitration agreements for Barry, Carroll, Majewski, and Talley until after their motion for leave to amend was filed, so "[t]he present dilemma is one of Defendant's own making." (ECF No. 48, PageID.718.) They argue their motion should be granted because dismissal of this FLSA collective action would be prejudicial to potential

4

collective members—who cannot receive notice without a named plaintiff. (*Id.* at PageID.719–722.) Plaintiffs further argue that Domino's waived or forfeited their right to assert the app-based arbitration agreement as a defense by waiting until now to raise that issue. (*Id.* at PageID.721.)

## II.

In general, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). But leave to amend may be denied for "undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, [or] lack of notice or undue prejudice to the opposing party." *Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019). A motion to amend is futile "where a proposed amendment would not survive a motion to dismiss." *Banerjee v. Univ. of Tenn.*, 820 F. App'x 322, 329 (6th Cir. 2020); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000))).

At the motion to dismiss stage, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.

### A.

The Court will first analyze whether plaintiffs' proposed amendment would be futile. This hinges on the validity of the arbitration agreements that the proposed plaintiffs signed.

A valid arbitration agreement is grounds for dismissal under 12(b)(6). *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) ("[A]n enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit."); *El-Hage v. Comerica Bank*, No. 20-10294, 2020 WL 7389041, at *2 (E.D. Mich. Dec. 16, 2020) ("A party's failure to pursue arbitration in spite of a compulsory arbitration provision means that the party has failed to state a claim under Rule 12(b)(6).").

And the Sixth Circuit has suggested that amendment would be futile where a plaintiff seeks to add claims that would be covered by an arbitration agreement. *See Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 310 F. App'x 858, 860 (6th Cir. 2009) ("[Defendant] properly invoked the agreement's arbitration clause. [Plaintiff's] amendment therefore would have been futile, and the district court did not abuse its discretion in denying [plaintiff's] motion [for leave to amend]."). And other courts in the Circuit, including this one, have explicitly found the same. *See Detroit Edison Co. v. Burlington N. & Santa Fe Ry. Co.*, 442 F. Supp. 2d 387, 395 (E.D. Mich. 2006); *Ntch W. Tenn, Inc. v. ZTE USA, Inc.*, No. 11-01169, 2011 WL 13147425, at *2 (W.D. Tenn.

6

Dec. 29, 2011); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 11-374, 2014 WL 1281475, at *10 (E.D. Ky. Mar. 27, 2014).

Here, each of the four proposed plaintiffs signed an arbitration agreement with their employers, the franchisees. (*See* ECF Nos. 47-3 (Carroll), 47-4 (Barry), 47-5 (Majewski), 47-6 (Talley).) Each arbitration agreement contained language indicating it applied to both the franchisee and Domino's. (ECF No. 47-3, PageID.666 ("'[T]he Company' refers to Domino's, and includes its parents, subsidiaries, affiliates, . . . vendors, and agents."); ECF No. 47-4, PageID.681 ("'[T]he Company' refers to [the franchisee], and includes its parents, subsidiaries, affiliates, . . . vendors, and agents."); ECF No. 47-5, PageID.691 (same); ECF No. 47-6, PageID.700 ("'[T]he Company' refers to [the franchisee] and includes its holding companies, parents, franchisors, subsidiaries . . . vendors, contractors, and agents.").) And each arbitration agreement contained a delegation clause requiring "any claim, dispute, and/or controversy relating to the scope, validity, or enforceability of this Arbitration Agreement" to be decided by the arbitrator. (ECF No. 47-3, PageID.667; ECF No. 47-4, PageID.682; ECF No. 47-5, PageID.692; ECF No. 47-6, PageID.702 ("all claims, disputes, and/or controversies").) So even the question of whether these proposed plaintiffs' FLSA claims must be arbitrated is a question for the arbitrator, not for this Court.

Additionally, Tally entered into a contract directly with Domino's through its driver app's terms of use, which included an arbitration agreement and a delegation

clause. (*See* ECF No. 47-7.) [1] The app required Talley to agree to these terms "each time he logged into [it]," which he did regularly from December 2020 to May 2021. (*Id.* at PageID.709.) And the terms of use stated, in bold and capitalized letters, "You and Domino's agree that any claim, dispute, and/or controversy arising out of or relating in any way to . . . the scope or validity of this arbitration provision shall be submitted to and resolved exclusively by binding arbitration, rather than in court." (*Id.* at PageID.713.)

So Domino's has shown that the proposed plaintiffs have entered arbitration agreements with their employers, the franchisees, and possibly with Domino's directly through the app. These agreements, if valid, would make it futile for the Court to grant leave to amend to allow Carroll, Barry, Majewski, and Talley to become

---

[1] Domino's also asserts that "potentially every other delivery driver" may have agreed to these same terms. (ECF No. 47, PageID.650.) But in the declaration it attaches from Mike Grange, the Senior Director of Store Digital Products for Domino's, Grange only identifies Talley as having logged into the driver app, and does not mention Carroll, Barry, or Majewski. (*See* ECF No. 47-7, PageID.709.) So whether these three other intended plaintiffs agreed to the terms may depend on whether they used Domino's driver app—which in turn depends on when the app was implemented at their respective franchises. Domino's says the driver app was made "generally available to franchisees" "in or around the last quarter of 2020" (ECF No. 47, PageID.650), while Grange says this happened "in or around the last quarter of 2019" (ECF No. 47-7, PageID.708). Carroll, Barry, and Majewski were all employed at their respective franchisees in 2020, but left before December of that year. (ECF No. 47, PageID.643–645 (noting that Carrol worked for Domino's until March 2020, Barry until June 2020, and Majewski until November 2020).) So if the app was implemented in 2019, they may have agreed to its terms, but if it was only implemented in the last quarter of 2020, they may or may not have.

Regardless, the Court understands Domino's point that many of the potential class members likely agreed to the terms of service in the driver app, and thus many potential collective members may be required to arbitrate their claims against Domino's. But the Court cannot decide that issue for absent collective members. *See Clark v. A&L Homecare & Training Cntr., LLC*, 68 F.4th 1003, 1013 (6th Cir. 2023).

8

plaintiffs, since they would be required to arbitrate their claims, or at least, have an arbitrator decide whether their claims are subject to arbitration per the delegation clauses.

The proposed plaintiffs say they contest the validity of the arbitration agreements, but they put forward only speculative reasons for why the agreements *might* not be valid (*See* ECF No. 48, PageID.720–721). And that is insufficient.

First, they argue that the Sixth Circuit has cautioned against using arbitration agreements to curtail the rights of potential opt-in plaintiffs, citing *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003, 1013 (6th Cir. 2023). But in *Clark*, the court dealt with a different question: "the showing of similarity that is necessary for a district court to facilitate notice of an FLSA suit to employees who were not originally parties to the suit." *Id.* at 1007. In *Clark*, there were already named plaintiffs with valid claims against A&L Homecare & Training, and the district court had to decide whether to give notice to other A&L employees who had signed a "valid arbitration agreement" with A&L. *Id.* at 1008. Notably, the court was only considering whether *notice* to these employees was necessary, not whether they had valid *claims* if they did join the already-existing collective. *Id.* at 1010. As the Sixth Circuit explained on review, the court must provide notice to employees who "*might* be similarly situated to the original plaintiffs, and who thus might be eligible to join the suit." *Id.* But if those employees, once noticed, were to attempt to join the action as opt-in plaintiffs, the court would then determine whether they had valid claims to be able to join. The court "can[not] and should [not] determine . . . whether absent

9

employees have agreed to arbitrate their claims." *Id*. at 1011. But the Court can and must determine whether present plaintiffs are required to arbitrate their claims.

Likewise, plaintiffs' arguments that "most employees [we]re probably not aware of nor underst[ood]" the arbitration agreements (ECF No. 48, PageID.720), that "most workers do not have any awareness of the on-boarding documents they are required to sign" (*id*. at PageID.717), and that Domino's did not produce those agreements before filing their response to the motion to amend (*id*. at PageID.720), have no bearing on whether the arbitration agreements are enforceable. What is at issue is whether Barry, Carroll, Majewski, and Talley agreed to arbitrate their disputes. Domino's provided agreements and affidavits that they have. And plaintiffs gave no specific facts in their reply that would lead the Court to believe these agreements were invalid or unenforceable.

So Barry, Carroll, Majewski, and Talley can be compelled to arbitrate their claims, or at least can be compelled to arbitrate the threshold issue of whether their claims must be arbitrated. Thus, allowing the proposed amendment would be futile.

## B.

Now on to whether Domino's has waived the argument that plaintiffs are required to arbitrate their disputes because of an app-based arbitration agreement. plaintiffs argue "Although this case has been litigated since June of 2022, Defendants *just now* disclosed that they consider in-phone Driver Delivery App agreements to require arbitration of this dispute . . . Dominos waived their right to assert these alleged App Agreements." (ECF No. 48, PageID.721.)

10

Waiver is "the intentional relinquishment or abandonment of a known right." *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 443 (6th Cir. 2021). As plaintiffs point out, "[t]he Sixth Circuit has long held that '[a] response to a pleading must set forth any matter constituting an affirmative defense. . . . Failure to plead an affirmative defense in the first responsive pleading to a complaint generally results in a waiver of that defense.'" (ECF No. 48, PageID.719 (quoting *Wallace v. Coffee County*, 852 F. App'x 871, 875 (6th Cir. 2021)).)

But the Court fails to see how *Wallace* supports plaintiffs' argument—it appears that defendants *have* put forth their arbitration defense in the "first responsive pleading to a complaint." Plaintiffs moved to amend their complaint. And in the very next document filed with the Court, defendants asserted arbitration (futility) as a defense and provided the proposed plaintiffs' arbitration agreements to the court. And plaintiffs themselves admit "Defendants have been asserting that they have arbitration agreements that bar opt-in plaintiffs' claims throughout this litigation." (*Id.* at PageID.718.)

Plaintiffs further contend that "it falls on Defendants to raise [arbitrability as an affirmative defense] and to do so with competent evidence." (*Id.* at PageID.717.) Defendants provided affidavits from franchisees stating that each of the proposed plaintiffs signed arbitration agreements with their respective franchisees and also

11

provided the arbitration agreements that plaintiffs signed.[2] This is competent evidence.

But even if the Court were to find that Domino's waived its right to assert the app-based arbitration agreement, each of the four proposed plaintiffs also have individual arbitration agreements with the franchisees that cover Domino's—meaning that each of them would be compelled to arbitrate their claims. So even if Domino's could not assert its app-based arbitration defense, amendment would still be futile.

## IV.

For the foregoing reasons, the Court DENIES plaintiff's motion for leave to amend. The case has been pending for nearly two years and the Court also denies the request for more time to find a viable plaintiff. Because there is no remaining lead plaintiff, the Court DISMISSES the case WITHOUT PREJUDICE.

SO ORDERED.

Dated: April 16, 2024

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE

---

[2] Two of the affidavits contain the plaintiff's actual signatures and all are accompanied by affidavits that these are true and complete copies of what the plaintiffs signed.